[Civ. No. 7834. First Appellate District, Division Two.—June 25, 1931.]

MARIE F. CORCORAN et al., Respondents, v. J. M. WARD et al., Appellants.

ALETA JENNINGS, Respondent, v. J. M. WARD et al., Appellants.

Myrick, Deering & Scott and Maurice J. Rankin for Appellants.

Glensor, Clewe & Van Dine and D. T. Jenkins for Respondents.

SPENCE, J.—Two separate actions were brought to recover for personal injuries sustained by Marie F. Corcoran and Aleta Jennings, respectively, and these actions were consolidated for the purpose of trial. Judgment upon two verdicts for $30,000 each were entered and appeals by defendants from both judgments are presented on one transcript.

At the outset we deem it appropriate to state that appellants' brief contains no. topical index and fails to present each point separately under an appropriate heading showing the nature of the question to be presented as required by rule VIII of the Rules of the Supreme Court and the District Courts of Appeal. These rules are designed for the assistance of the court in determining the questions presented on appeal as well as to guide opposing counsel in answering the points raised. Failure to comply with the rules may result in striking the briefs from the file or even dismissal of the appeal; and if no such action is taken, complaint should not be made in the event that some point, hidden in the pages of a lengthy brief without an appropriate heading, is not discussed in the opinion. In the present case a reading of appellants' brief leads us to the conclusion that the main contentions are that the evidence was insufficient to show negligence on the part of appellants and that the verdicts were excessive and we will proceed to a consideration of these contentions.

The question of negligence in the present case was, in our opinion, a question of fact upon which the determina-

tion of the jury is conclusive. The accident happened late at night on June 15, 1928, upon a curve on the main highway at what is known as Dawson's Corners near Sunnyvale in Santa Clara County. This curve may be described as a sweeping, slightly banked curve with an improved surface twenty feet in width. In approaching this curve traveling from San Jose toward San Francisco the highway runs in a northerly direction and turns at the curve and proceeds in a westerly direction. Appellants' truck, which was heavily loaded, was traveling toward San Francisco with appellant Sweeney driving and his wife accompanying him. Respondents were traveling toward San Jose in a Chrysler automobile belonging to Mrs. Jennings' husband with Mrs. Corcoran driving. The lights on both cars were burning, but the two vehicles collided in a head-on collision about half-way around the curve. From what has been said it follows that in traveling upon their respective right sides of the highway in making the curve, appellants' car should have remained on the outer half of the road and respondents' car should have remained on the inner half of the road.

There was a sharp conflict in the evidence relating to the point of impact. Respondents tried the case upon the theory that their car traveled in the proper position at all times and that the collision was caused by the negligence of appellant Sweeney in driving the truck upon the wrong side of the highway. Appellants defended upon a similar theory, claiming that the truck traveled in the proper position and that the collision was caused by the negligence of Mrs. Corcoran in driving respondents' car on the wrong side of the highway. There was evidence to sustain either theory. It is conceded by appellants that Mrs. Corcoran's testimony sustained respondents' theory, but it is claimed that her testimony ''is not sufficient to overthrow the overwhelming array of evidence to the contrary''. We assume from the authorities cited that it is claimed that her testimony was inherently improbable and did not create a substantial conflict for it is elemental that the testimony of one witness who is entitled to full credit is sufficient proof of any fact in a civil case. (Code Civ. Proc., sec. 1844.)

There were only three eye-witnesses to the accident who testified to the facts surrounding it, Mrs. Jennings having lost her recollection of the events through the injuries re-

ceived. These witnesses were Mrs. Corcoran, who testified for respondents, and Mr. Sweeney, one of the appellants, who was driving the truck, and Mrs. Sweeney, his wife, who testified for appellants. Further testimony bearing upon the question of negligence related to the position and condition of the cars after the accident, the marks upon the highway, and the location of various bits of wreckage. Referring to the eye-witnesses, the record shows that Sweeney was thoroughly discredited by his own testimony and the jury was warranted in disregarding his entire version of the accident. In addition, it appears that if the jury gave any credence to his testimony, such testimony was sufficient in itself to show an entire want of care on his part. He testified on several occasions that he was not aware that any other car was approaching until the moment of impact and when asked to tell how long a time elapsed between the time he saw the lights of the other car and the time of impact he illustrated with a hand clap and said "That quick." We may further add that on the trial Sweeney on several occasions illustrated his version of the positions of the cars at various times by using two small model automobiles in connection with diagrams of the scene of the accident. It is impossible to determine from the record just what motions he went through before the jury and it may be as claimed by respondents that one of his illustrations involving the movement of the cars was entirely in accord with respondents' contentions.

From the discussion in appellants' brief it appears that appellants are endeavoring to prove that respondents' theory and Mrs. Corcoran's testimony in support of that theory were inherently improbable through the evidence relating to the marks on the highway and position and condition of the cars after the accident. Preliminarily we may state that the testimony tended to show that as a result of the collision the cars became enmeshed and the Chrysler was thrown to the right side of the truck; that the truck proceeded ahead along the highway in the general direction in which it was traveling before the accident making a gradual turn to the right and running some distance off the outer edge of the highway before coming to a stop; that the Chrysler was either pushed backward ahead of the truck or dragged along at the right side of the truck until it became disentangled and stopped on the outer edge of the highway facing in the

opposite direction from that in which it was traveling prior to the accident. The front tires of the Chrysler were torn off and it is claimed by appellants that the marks on the highway were made by the metal rims of the Chrysler's front wheels. These marks were all on the outer half of the highway. The photographs introduced as exhibits showed that the front of the Chrysler was almost completely demolished, the greatest damage being done to the right front portion. The damage to the truck was all on the right front side. From these facts it is argued by appellants that the collision must have occurred on the outer half of the highway. On the other hand, respondents contend that if the collision occurred on the outer half of the highway, as claimed by appellants, the Chrysler would have been entirely off the highway when dragged along on the right side of the truck. Respondents further point out that the testimony shows that one of the headlights of the Chrysler and a large amount of broken glass were found on the inner half of the highway; that some of the broken glass was found entirely off the inner edge of the paved portion of the highway; and that on the following day the ear-drop worn by Mrs. Jennings was found in the dirt off the inner edge of the highway. All of this testimony was properly before the jury to be considered by them in resolving the conflict in the testimony of the various witnesses relating to the point of impact. The difficulty with appellants' argument relating to the marks on the highway is found in the fact that no satisfactory evidence was introduced to show whether the Chrysler was pushed backward in its original course after the accident thereby making these marks or whether the Chrysler was immediately thrown to the right side of the truck making the marks as it was dragged along in this position. Although Sweeney testified that immediately following the impact the Chrysler moved backward in the direction from which it had come, he could not say whether it moved in that direction as much as one foot. On further examination he was asked: "Q. You don't know, so it may have started to swing to your right at the very moment of impact, as far as your recollection goes?" He answered: "I don't know." If we could assume that these marks started at the exact point of impact and indicated the position of the front wheels of the Chrysler at the very moment of impact, there would be some merit in

appellants' contention, but we are not warranted in making these assumptions. It is also possible under the evidence to assume that these marks did not start at the point of impact, but were made after the Chrysler was thrown to the right side of the truck.

The complexity of forces operating on two rapidly moving vehicles in collision with one another often makes it exceedingly difficult to reconstruct the manner of the happening of the accident from testimony concerning the marks found upon the highway and the positions and condition of the cars after the accident. This is more particularly true when the collision occurs while the vehicles are rounding a curve. Unless the testimony in this regard cannot by any possibility be reconciled with the direct testimony of the witnesses for the prevailing party relating to the manner in which the collision occurred, it cannot be said that such direct testimony is inherently improbable. Although the case is not analogous on its facts, a somewhat similar contention to that of appellants was made in *Kroell* v. *Lutz*, (Mo. App.) 210 S. W. 926, where the court said at page 928: ''It is urged that no combination of forces could have left the two cars in the respective positions they were left in, if the collision happened the way plaintiff's witnesses say it did, and hence we are asked to set aside the judgment because it rests wholly on testimony in conflict with well-known physical laws. But manifestly this is not the case. Bodies, when acted upon by different forces at different angles, move along a line called the resultant of all those forces; and the momentum of the two moving cars, the sudden impact and stopping of the front portions thereof, the swinging around or skidding of the heavy rear portions thereof, thus suddenly arrested in their forward movement, the interlocking and taking off of one wheel, and the resistance caused by ploughing up the asphalt, all done in an instant of time and with terrific force, are sufficient to present such a complexity of forces and resultants as to afford no idea of where the two cars would go or what they would do, and the only way to find out would be to survey them after they ceased movement.'' Under the evidence in the present case, we are unable to say that the testimony of Mrs. Corcoran was inherently improbable. In our opinion it created a substantial conflict in the evidence relating to the point of impact and

the manner in which the accident happened and the implied finding of negligence on the part of appellants was amply sustained.

It is further asserted by appellants that the verdicts are excessive. This assertion is made, but less than one page of appellants' brief is devoted to the subject. A reading of the record discloses that any attempt to outline the frightful injuries received by the respondents would require several pages. Before the trial court and the jury, appellants' counsel did not attempt to minimize these injuries. In his opening statement to the jury he said: "With respect to the terrible injuries that these two women received, we will introduce no evidence whatsoever. We do not question in the remotest degree, the character, gravity, or severity of these injuries, they are terrible. . . . " Again, on motion for nonsuit, counsel stated: "We concede there is not a question in this case of their frightful injuries, they are terrible injuries . . . " As counsel has merely asserted on this appeal that the verdicts are excessive without any adequate argument or any reference whatsoever to the record, we cannot believe that this point is seriously urged. However, we have examined the record and are convinced that under the evidence neither verdict was excessive and that both are amply sustained.

The judgments appealed from are and each of them is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 25, 1931, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 24, 1931.