[Crim. No. 5028.   Second Dist., Div. Two.   Aug. 6, 1953.]

THE PEOPLE, Respondent, v. EDWARD ERKINGER, Appellant.

552

Nathan H. Snyder and Abraham Gorenfeld for Appellant.

Edmund G. Brown, Attorney General, and Alan R. Woodard, Deputy Attorney General, for Respondent.

MOORE, P. J.—Wearing a sport shirt and carrying his coat over his arm, appellant entered the balcony of a theater on Hollywood Boulevard in Los Angeles about 9 o'clock in the evening. It was the last day of August, 1952. As he entered from the west side of the upper balcony, he glanced up and then looked to the lower floor. Starting across the main aisle dividing the two sections of the balcony, he looked about and proceeded toward the back where he occupied the ninth seat from the aisle in the third row. He sat looking at the people in all directions for about three minutes. Then he arose, still carrying his coat, walked eastward and down the main aisle toward the west end of the balcony. There he occupied a seat about seven rows from the front and gazed about him, paying no attention to the picture. As he sat, his head moved from side to side, only at times toward the front although the screen was directly before him. Following a three-minute intermission, defendant arose, proceeded down the main aisle, crossed the balcony to its east entrance and turned his gaze backward toward the audience. As the house lights were dimmed and the screen was again illuminated, appellant crossed the balcony to its west entrance. In doing so, he looked both downward into the loge section and up into the general admission area. On arriving at the west entrance, he turned, walked back toward the east side of the balcony to its fourth aisle from the west end and entered a row in the loge section in which

no other person was seated. He occupied a seat behind and to the right of the witness, Mrs. Tobey, whose husband sat on her left. Her coat was on the seat to her right and her purse was beneath it. Removing his own coat from his arm, appellant draped it over the seat upon which lay the coat and purse, and sat down. He then withdrew a cigarette from his pocket and on putting it into his mouth he leaned over, extending both hands to his coat as if in the act of searching for a match. But his hands went further. They reached under Mrs. Tobey's coat and to her purse which he opened. He picked out the billfold and brought it up under his coat. He then started out of the aisle toward the west side of the balcony, continued to the main aisle and directed his course to the east entrance. During such movements he kept his coat over his arm with both hands thereby concealed. But as he approached the exit, he began to don his coat.

Just then, Police Officer Boardman who served as house detective and who had observed every movement of appellant in the theater, placed him under arrest. Instantly appellant turned and threw away the billfold which fell in the loge section of the balcony. After the officer searched his quarry for arms, he applied handcuffs and escorted the unfortunate man to the office of the theater. There a uniformed policeman guarded the prisoner while Officer Boardman returned to the balcony for Mrs. Tobey. On learning of the absence of her wallet, she accompanied the officer to the office where he searched appellant. Not finding the billfold on appellant's person, the officer returned to the balcony. By inspecting the floor of the loge he retrieved the wallet which the lady identified in the presence of the two officers and her husband as the one that had been in her purse in the balcony. When told by the officer that the latter had seen him remove the billfold from the purse, appellant denied having any knowledge of it whatsoever.

Mrs. Tobey testified that she had given no one permission to remove her billfold from her purse and that the one recovered by the officer was her own.

The sole ground for appeal is that the testimony of Officer Boardman was inherently improbable. The improbability urged by appellant lies in his claim that although the officer was seated six or eight feet to the left of appellant with his vision obstructed by Mr. and Mrs. Tobey, he could see appellant extract a billfold from a pocketbook lying on the

seat to the right of Mrs. Tobey and covered by the coats of
Mrs. Tobey and appellant. He argues that in order to see
appellant extract an object so slight, it would have been neces-
sary ''for appellant to lean forward and bring his hand over
the back, down to the bottom of the seat on which the purse
was placed. . . . This area was obstructed by Mr. and Mrs.
Tobey, the two coats and the back of the seat itself.'' Such
contention ignores other important evidence as well as ordi-
nary and reasonable inferences to be drawn from established
facts. Mrs. Tobey's billfold was in her purse; it was removed
without her consent; the officer observed appellant lean over
the seat, take something from beneath her coat; make his re-
treat to the exit; and, when arrested, throw the object into a
loge. Therefore, whether the officer's eye detected the color
or size of the billfold at the very instant it was being moved
from the purse is not important. The fact of appellant's
being in the immediate presence of the billfold, his leaning
forward, placing his hand beneath the lady's coat, his imme-
diate departure from the place where he had sat, his subse-
quent movements and arrest and his casting the stolen wallet
to the floor, are sufficient facts to justify the finding of his
guilt.

Evidence must be considered in the light most favorable
to the judgment. ▮ It is not the function of the appellate
court to determine the weight of evidence. Its task is to
determine whether, upon a consideration of the evidence as
recorded, sufficient facts could not have been found by the
jury to warrant the inference of guilt. ▮ Before the
judgment in a criminal action can be reversed, it must be
made clear that upon no hypothesis whatever is there suffi-
cient substantial evidence to support the conclusion of the
trial court. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104
P.2d 778].) ▮ After the fact finder in the first instance
has determined the guilt of the defendant and the trial court
has found no reason for granting a new trial, if there is ade-
quate evidential support the reviewing court is powerless to
interfere with the judgment. (*People* v. *Kristy,* 111 Cal.
App.2d 695, 698 [245 P.2d 547].)

▮ Appellant cherishes a restricted view of the signifi-
cance of what is ''inherently improbable.'' The word prob-
able is from the Latin verb *probare,* meaning to prove. Hence,
probable is provable. If a proposition is probable, it is likely to
be true or real. (Webster's New Int. Dict.) If it is probable,

it is credible; such as to commend itself to the mind. (Oxford Eng. Dict.)

To claim that the testimony of the police officer is "inherently improbable" is to disregard all inferences reasonably to be drawn from his observations. To say that a sworn statement is inherently improbable would mean that it is wholly unacceptable to reasonable minds. (*Kircher* v. *Atchison, T. & S. F. Ry. Co.*, 32 Cal.2d 176, 183 [195 P.2d 427].) But the officer's testimony is readily reconcilable with (1) the known behavior of pilfering persons who roam about in the nighttime where people congregate, (2) the known conduct of thieves who use devices to cover the objects of their immediate desires, (3) the incontrovertible facts that appellant threw the wallet into a loge and that Mrs. Tobey had not given permission to have it removed from her purse, (4) the experience of officers in detecting the aims of prowlers and in observing their movements, (5) the inferences that the apparently purposeless movements of a man's walking from aisle to aisle and from row to row of seats in a theater until he finally comes to rest behind the chair on which a lady has placed her purse and her outer wrap, (6) the act of appellant in ostensibly searching for a match in his own coat pocket when he reaches all the way down to the purse concealed by the wraps. Where the testimony of a witness in a criminal trial accords with facts established by other proof or with well known physical laws or laws governing human conduct, then it is not inherently improbable but it affords substantial evidence of the crime. (See *Corcoran* v. *Ward*, 115 Cal.App. 180, 185 [1 P.2d 455].)

The judgment and the order denying the motion for a new trial are affirmed.

McComb, J., and Fox, J., concurred.