SHERMAN C. HUSTED, APPELLEE, V.
PETER KIEWIT AND SONS CONSTRUCTION CO.,
APPELLANT.

313 N.W.2d 248

Filed December 4, 1981. No. 44093.

Larry E. Welch and Timothy J. Augustyn of Gross, Welch, Vinardi, Kauffman & Day, P.C., for appellant.

Richard D. Brown and Robert F. Martin of Martin & Brown for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

BOSLAUGH, J.

This is an appeal in a proceeding under the Nebraska Workmen's Compensation Act.

The plaintiff was employed as a carpenter by the defendant. He injured his lower back on October 11, 1976, while helping lift a piece of "petrocal" roofing onto a conveyor. It is not disputed that the plaintiff's back injury arose out of and in the course of his employment.

After the accident the plaintiff was examined and treated by Dr. Minard for the injury to his back. On November 5, 1976, the plaintiff first complained of pain in the area at the base of his neck. The principal issue on the appeal is whether the plaintiff is entitled to compensation for the claimed injury to his neck.

After the hearing before a single judge of the compensation court, the plaintiff recovered an award for temporary total disability and medical and hospital expenses. The court found: "The medical evidence presented by the plaintiff clearly fails to causally connect said cervical disc disorder with the plaintiff's accident of October 10, 1976 . . . ."

Upon rehearing before the three-judge compensation court, with one judge dissenting, the court found that the "cervical disorder" was causally connected to the accident of October 11, 1976. The defendant has appealed to this court.

Immediately after the accident the plaintiff's complaints were of pain in the lower portion of his back. Dr. Minard's initial diagnosis was a herniated intervertebral lumbar disc. The plaintiff was treated with painkillers, muscle relaxants, and bed rest, with the treatment concentrating on the lumbar area of his back. On November 5, 1976, the plaintiff first complained of pain in the area at the base of his neck. Dr. Minard then injected plaintiff's neck area with Kenalog and Xylocaine. On November 8, 1976, the plaintiff was hospitalized for further tests in the lumbar area of his back. A myelogram indicated a ruptured lumbar disc, which was then removed surgically by Dr. Browne.

The plaintiff continued to have pain in his lower back and returned to Dr. Minard for treatment a number of times in early 1977. In May 1977 plaintiff underwent further surgery in the lumbar area of his back, to fuse the spine at the place where the disc had been removed in November. Beginning in August 1977 plaintiff's complaints began to concentrate more on pain in the neck region. Dr. Minard treated the neck complaints

with a cervical traction device, pain medication, and a cervical collar until about November 21, 1977, when Dr. Minard felt that the plaintiff's neck problem had cleared up.

The plaintiff's lower back was still quite painful, and in early 1978 Dr. Minard recommended that he be retrained through vocational rehabilitation services, because the doctor felt that the plaintiff "could never return to work as a common laborer." Beginning in July 1978 the plaintiff began a 1-year training course as a welder through vocational rehabilitation services. He finished the course in May or June 1979. During that year he continued to see Dr. Minard with complaints of constant back pain.

In June 1979, on Dr. Minard's recommendation, the plaintiff attempted to return to work. He worked for 1 week at Wheatland, Wyoming, as a welder, but was terminated by his employer. The plaintiff testified that he was fired because he told his supervisor that he would not do certain tasks because of his back pain; his supervisor testified by deposition that the plaintiff was fired because he complained constantly, although he did not complain about back pain.

On July 6, 1979, the plaintiff again saw Dr. Minard with complaints of both lumbar and cervical pain. The cervical pain was now radiating into his right upper arm and shoulder. Dr. Minard suspected a herniated cervical disc. A cervical myelogram performed by Dr. Browne indicated a herniated cervical disc, and Dr. Browne recommended surgery. The night before the operation was to be performed, the plaintiff was advised that the defendant's insurance carrier would not pay for the cervical operation. The operation was cancelled and the plaintiff left the hospital.

On rehearing, four physicians testified concerning a possible causal connection between the plaintiff's cervical injury and the October 11, 1976, accident. Dr. Minard, the treating physician, testified: "I do not know whether this [cervical disorder] came out of his employ-

ment or not. I have nothing to hang my hat on to say that he hurt his neck working for Peter Kiewit or he did not hurt his neck working for Peter Kiewit."

There was some evidence that at one time Dr. Minard had prepared a report which indicated a causal connection between the October 11, 1976, accident and the cervical injury. That report was destroyed after Dr. Minard was advised that the attorneys requesting the report would be unwilling to pay for it or did not want it. However, Dr. Minard's testimony under oath before the compensation court, and by deposition, was that the cervical problem was not related to the October 11, 1976, accident, and that it was speculation as to whether the injury was "secondary to strictly degeneration or degeneration with trauma superimposed."

Dr. Browne testified that he could not causally connect the cervical disorder to the work accident and that he knew nothing about the plaintiff's cervical complaints until July 1979, nearly 3 years after the accident.

Dr. Kratochvil, who examined the plaintiff in April 1980, at the request of the defendant, made no cervical examination of the plaintiff. He gave no opinion as to a causal relationship between the cervical disorder and the October 11, 1976, accident.

The only medical testimony that attempted to establish a causal relationship between the plaintiff's cervical condition and the October 11, 1976, accident was that of Dr. Brantigan, an orthopedic surgeon who first examined the plaintiff on November 7, 1979. Dr. Brantigan testified that the first major complaint by the plaintiff with regard to his neck represented a manifestation of the cervical disc injury. He further testified that in his opinion the injury to the cervical spine "occurred sometime between the time of the injury, October 11th, and the time that it was originally recorded that he had a major complaint of his neck, which was November 5th. I feel that the injury to his cervical spine occurred sometime during that 20-day interval." Upon being asked whether the cervical injury

occurred at the time of the October 11, 1976, accident or during bed rest following the accident, Dr. Brantigan testified that it was "more likely" that the cervical injury occurred while the plaintiff was lifting than while he was at bed rest. Dr. Brantigan was not examined with respect to degeneration as a cause of the cervical problem.

The findings of fact made by the compensation court will not be set aside on appeal unless clearly wrong. However, where there is not sufficient competent evidence in the record to warrant the making of the award, or the findings of fact do not support the award, this court must modify, reverse, or set aside the award. Neb. Rev. Stat. § 48-185 (Reissue 1978); *Riha v. St. Mary's Church & School, Inc.*, 209 Neb. 539, 308 N.W.2d 734 (1981). See, also, *Spiker v. John Day Co.*, 201 Neb. 503, 270 N.W.2d 300 (1978).

The plaintiff's injuries in this case were not of an objective nature, and medical testimony was required to establish a causal connection between the October 11, 1976, accident and the claimed injuries.

The evidence clearly supports the finding that the plaintiff was totally disabled at the time of the hearings and was unable to perform any work for which he had previous training or experience because of the severity of his low back pain. Although the record does not show that the plaintiff has reached his maximum recovery from the injury to his lower back, it strongly suggests that his disability may well be permanent. Unless there is substantial improvement in the condition of the plaintiff's back, the plaintiff may be entitled to compensation for permanent total disability because of the injury to his lower back.

With respect to the cervical condition, we conclude that the evidence does not support the finding that it was causally connected to the accident of October 11, 1976.

A workmen's compensation award cannot be based upon possibility or speculation. If an inference favor-

able to the claimant can only be reached upon the basis of possibility or speculation, he cannot recover. *Welke v. City of Ainsworth*, 179 Neb. 496, 138 N.W.2d 808 (1965). An award cannot be based upon conflicting inferences of equal degrees of probability.

The finding of the compensation court, of necessity, rested upon the testimony of Dr. Brantigan. At best, Dr. Brantigan could only fix the time when he believed the injury occurred to be within a "range" of 20 days. His opinion amounted to no more than a statement that it was "more likely" the injury occurred on October 11, 1976, than when the plaintiff was at bed rest. This testimony lacked the definiteness and certainty necessary for it to be the basis for a compensation award. See, *Camarillo v. Iowa Beef Processors, Inc.*, 201 Neb. 238, 266 N.W.2d 917 (1978); *Marion v. American Smelting & Refining Co.*, 192 Neb. 457, 222 N.W.2d 366 (1974).

The finding of the compensation court that the plaintiff's "cervical disorder was causally connected to said accident" is set aside and the judgment modified accordingly. The judgment, in all other respects, is affirmed and the cause remanded for further proceedings in conformity with this opinion.

AFFIRMED AS MODIFIED AND REMANDED FOR FURTHER PROCEEDINGS.

WHITE, J., concurring in part, and in part dissenting.

Insofar as the majority suggests that the employee is totally and permanently disabled, I concur in the result. I disagree with the majority in its holding that there was not sufficient medical evidence to sustain a finding that the cervical condition was caused by the accident on or about October 11, 1976. The effect of this finding is that the employee shall be forced to bear entirely the cost of the necessary cervical laminectomy which I believe the evidence sustains was caused by the accident on or about October 11, 1976. After the accident on or about October 11, 1976, plaintiff "was treated in the

typical manner, conservative-type treatment, as an out-patient, with basically bedrest at home." Plaintiff continued to see Dr. David W. Minard and was treated with muscle relaxants and pain medication. On November 5, 1976, Dr. Minard, plaintiff's treating physician, made this note: "Nov 5 . . . Notes no improvement what so ever [sic] neck is quite painful also. . . ."

The evidence relating to the period of time between the date of the accident and the date the plaintiff first complained of neck pain to Dr. Minard indicates that the plaintiff was at home, not working, and resting in bed. It is not contended that plaintiff had experienced any symptoms of cervical neck pain prior to November 5, 1976.

After several examinations and review of previous reports and consultations with other physicians, Dr. John W. Brantigan testified to a question as follows: "Would you state, with reasonable medical certainty, what that opinion is, please? . . . A My opinion is that, of a reasonable medical certainty, Mr. Husted's lower lumbar problem was caused by the injury as described on October 11, 1976.

"I feel that, of a reasonable medical certainty, the cervical disk rupture occurred between October 11th and November 5th of 1976.

"I have a difficult time bridging that 20-day gap in assigning cause relationship to that injury, but my opinion is that, given the history as described and excluding other history that may have been relevant, of which I am unaware, it is more likely that the cervical disk was injured in the lifting accident than it was in the bed rest period during that 20-day time.

"Now, I feel that if there was other history involved that I'm not aware of — for example, if the patient had a fall on his head or did some other strenuous lifting or something of that nature — then my opinion would be different. But, given the history as described, that is my opinion."

The testimony of Dr. Brantigan, that it was more

likely (than not) that the cervical injury occurred as a result of the accident on or about October 11, 1976, was sufficient evidence on which the compensation court could have based its decision to find the jury compensable.

In *Lane v. State Farm Mut. Automobile Ins. Co.*, 209 Neb. 396, 411, 308 N.W.2d 503, 512 (1981), we said: "Although it is generally stated that medical testimony must be given with 'reasonable medical certainty,' we have been unable to find any Nebraska case which specifically so states. It has frequently been held that medical testimony couched in terms of 'possibility' is not sufficient, although when such testimony is in terms of 'probability' it is sufficient. We have held that 'reasonable certainty' and 'reasonable probability' are one and the same thing." More likely (than not) is the equivalent of probability. *People v. Erkinger*, 119 Cal. App. 2d 551, 259 P.2d 492 (1953); *Aultman v. Dallas Ry. & Term. Co.*, 152 Tex. 509, 260 S.W.2d 596 (1953); *Hallum v. Omro*, 122 Wis. 337, 99 N.W. 1051 (1904). The majority suggests that Dr. Brantigan in later testimony somewhat modified or weakened his previous opinion. We do not here decide the truth of Dr. Brantigan's testimony. We simply decide whether it is legally sufficient. The opinion that Dr. Brantigan expressed with respect to the causation of the cervical injury was given in terms which are to all intents and purposes identical with the standard required under Nebraska law for proof of causation. Any testimony which may cause a trier of fact to doubt Dr. Brantigan's conclusions does not thereby destroy the sufficiency of favorable evidence which supports the decision of the three-judge panel of the compensation court.

The decision of the three-judge compensation court is correct and should be affirmed.

KRIVOSHA, C.J., and BRODKEY, J., join in this concurrence and dissent.