BRENT F. GILBERT, APPELLANT AND CROSS-APPELLEE, v. SIOUX CITY FOUNDRY, APPELLEE AND CROSS-APPELLANT.

422 N.W.2d 367

Filed April 29, 1988.   No. 87-281.

LeRoy J. Sturgeon of Smith & Smith, for appellant.

Francis L. Goodwin, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

Brent F. Gilbert, plaintiff, appeals a majority decision of a Workers' Compensation Court panel that reduced the award plaintiff received from a single workers' compensation judge. Sioux City Foundry cross-appeals.

We hold that the findings and award of the workers'

compensation panel were clearly wrong and that plaintiff's petition for compensation should be dismissed.

Plaintiff claims the panel erred in three particulars: (1) in failing to either award or deny certain medical expenses; (2) in reducing plaintiff's partial disability award from that granted by the single workers' compensation judge's award; and (3) in failing to award plaintiff rehabilitation services.

Defendant, in its cross-appeal, assigns as error the panel's majority finding that the plaintiff's disability was caused by an accident arising out of and in the course of his employment.

In reviewing a case of this nature, the findings of fact made by the Workers' Compensation Court after rehearing have the same effect as a jury verdict in a civil case and will not be set aside unless clearly wrong. *Kuticka v. University of Nebraska-Lincoln*, 227 Neb. 565, 418 N.W.2d 593 (1988); *Thom v. Lutheran Medical Center*, 226 Neb. 737, 414 N.W.2d 810 (1987); Neb. Rev. Stat. § 48-185 (Cum. Supp. 1986).

Plaintiff began working in defendant's foundry in 1978. Prior to knee surgery in 1985, plaintiff operated a "squeezer" machine. That machine was used to mold products in the foundry. The plaintiff contends that he began to have symptoms in his knees and that he permanently injured both of his knees in the operation of the squeezer. Beneath the table portion of the squeezer were two paddles which were operated by the operator, using the side of each of his knees. The evidence is unclear as to whether the knee struck the paddle or whether the knee moved the paddle through pressure alone. The defendant testified that each paddle was moved 1 inch by pressure. The paddles were used to open air valves, one of which permitted air to help pack sand in the molding process and the other of which permitted air to assist in taking the mold apart.

At trial, plaintiff claimed that using his knees to activate the paddles caused his knees to hurt. He also said that several times he fell off a raised grate on which he stood to operate the squeezer. At trial, Gilbert did not claim that his knee problems were caused by a fall or by the twisting of his knees. The plaintiff first sought medical assistance from his family physician. When conservative treatment did not alleviate the

soreness in Gilbert's knees, his family doctor referred Gilbert to an orthopedic surgeon. After further conservative treatment, arthroscopic surgery was performed upon both of Gilbert's knees on August 1, 1985. Arthroscopy revealed two abnormal folds in the synovial membrane, or lining of the joint, in each knee. The folds were caused either congenitally or through improper development of the knees. The folds were excised. Other tissue on the outside of each patella (kneecap) was released to permit the kneecaps to glide properly. The kneecaps had been prevented from gliding properly. In the left knee, there was minimal chondromalacia, i.e., the cartilage was degenerating. It was a wearing-out process.

Gilbert's orthopedic surgeon testified that the folds in Gilbert's knees were congenital. An orthopedic surgeon engaged by the defendant examined the plaintiff. This surgeon testified that the folds in the lining of Gilbert's knees formed while plaintiff's knees were in the developmental stage. Neither surgeon attributed the folds to any trauma or to Gilbert's work. There being no medical evidence to the contrary, it can only be concluded that plaintiff's folds were from natural causes, and any disability caused by them is not compensable. A disability that is due to natural causes is not compensable under the workers' compensation law. This is true even though the disability occurs *while* the employee is at work. Neb. Rev. Stat. § 48-151(4) (Reissue 1984). See, also, *Sellens v. Allen Products Co., Inc.*, 206 Neb. 506, 293 N.W.2d 415 (1980).

Any finding of compensable disability under the workers' compensation law based upon the folds in Gilbert's knees would be clearly wrong.

Next to be considered is whether Gilbert's work on the squeezer machine aggravated a preexisting condition and whether such aggravation, if any, is compensable under the workers' compensation law.

There is no presumption from the mere occurrence of an unexpected or unforeseen injury that the injury was in fact caused by employment. § 48-151. Also, the presence of a preexisting condition enhances the degree of proof required to establish that the injury arose out of and in the course of employment. *Kingslan v. Jensen Tire Co.*, 227 Neb. 294, 417

N.W.2d 164 (1987); *Hayes v. A.M. Cohron, Inc.*, 224 Neb. 579, 400 N.W.2d 244 (1987).

Under § 48-151(4), a disability that is the result of a natural progression of any preexisting condition is not compensable. In order to sustain the burden of proving an accident as well as causation, the evidence presented by the claimant must be definite and certain to warrant a compensation award. *Kingslan, supra*; *Hayes, supra*; *Masters v. Iowa Beef Processors*, 220 Neb. 835, 374 N.W.2d 21 (1985).

In Gilbert's case, his injuries were not of an objective nature. Therefore, medical testimony was required to establish a causal connection between plaintiff's work and his sore knees. *Husted v. Peter Kiewit & Sons Constr. Co.*, 210 Neb. 109, 313 N.W.2d 248 (1981).

To completely resolve this case there are three additional rules of law that must be considered: (1) "For medical testimony to be the basis for an award, it must be sufficiently definite and certain that a conclusion can be drawn that there was a causal connection between the accident and the disability." *Powell v. W. G. Pauley Lumber Co.*, 217 Neb. 707, 710, 350 N.W.2d 556, 558 (1984); *Husted, supra*; *Randall v. Safeway Stores*, 215 Neb. 877, 341 N.W.2d 345 (1983). (2) "An award cannot be based upon conflicting inferences of equal degrees of probability." *Husted, supra* at 114, 313 N.W.2d at 251; *Camarillo v. Iowa Beef Processors, Inc.*, 201 Neb. 238, 266 N.W.2d 917 (1978); *Marion v. American Smelting & Refining Co.*, 192 Neb. 457, 222 N.W.2d 366 (1974). (3) A disability which is the result of a natural progression of any *nonoccupational* preexisting condition is not compensable under the workers' compensation law. But, if there is a preexisting *occupational* disease, then the employer is liable, but only for the degree of aggravation of the preexisting occupational disease. § 48-151(4).

In Gilbert's case, there was a preexisting condition in each of his knees due to natural causes rather than from a preexisting occupational disease. It must then be determined if the soreness in Gilbert's knees of which he complains and which became symptomatic in 1984 was the result of a natural progression of his nonoccupational preexisting condition. If it was, Gilbert is

not entitled to an award.

A fair reading of the medical testimony in this case reflects that it is just as likely that Gilbert's knees became symptomatic from his doing things that a human being does in ordinary life as it is likely that the knees became symptomatic from his work. Gilbert's orthopedic surgeon testified on cross-examination that he could not pinpoint what caused Gilbert's folds to become symptomatic beyond what Gilbert indicated, that his knees had become symptomatic as a result of his work activities. The surgeon also testified: "I don't know exactly how his symptoms developed except that he [Gilbert] indicates that they developed *while* he was working at the foundry." (Emphasis supplied.) Gilbert's surgeon further testified on cross-examination that Gilbert's knees could have become symptomatic just in his ordinary life without Gilbert's ever having worked at the foundry or in a foundry job. He said it would be difficult to separate out the ordinary life activities from work activities as the cause of the symptomatology of Gilbert's knees. The surgeon did not do so.

Defendant's examining orthopedic surgeon testified that whatever a person with a knee development problem does may cause irritation, whether it is working, playing, squatting at home, painting, or anything. So, "*I suppose* technically it could be somewhat associated with his work," said the examining surgeon. (Emphasis supplied.) He added, "I don't know how you divide the two."

The medical testimony in this case is not sufficiently definite and certain to warrant a conclusion that Gilbert's disability was causally connected with his work activities. Indeed, both orthopedic surgeons testified to conflicting inferences of equal degrees of probability that Gilbert's knee symptomatology could have been from ordinary activities or work activities. Assuming arguendo that some of the symptomatology was related to Gilbert's work activities, neither of the surgeons was able to identify which portion of Gilbert's disability could be attributed to his work. Thus, Gilbert's evidence failed to meet two requirements of § 48-151(4): (1) that his preexisting condition was occupationally connected, and (2) that it provide proof of the degree of aggravation from his work for which his

employer would have been liable had the preexisting condition been occupationally connected.

Gilbert simply did not meet his enhanced burden of proof to establish that his knee soreness arose out of and in the course of his employment.

Where there is not sufficient competent evidence in the record to warrant the making of the award, or the findings of fact do not support the award, this court must modify, reverse, or set aside the award. § 48-185; *Husted v. Peter Kiewit & Sons Constr. Co.,* 210 Neb. 109, 313 N.W.2d 248 (1981); *Riha v. St. Mary's Church & School, Inc.,* 209 Neb. 539, 308 N.W.2d 734 (1981). See, also, *Spiker v. John Day Co.,* 201 Neb. 503, 270 N.W.2d 300 (1978).

Considering the applicable law and the record, there is not sufficient competent evidence in this case to warrant the making of a compensation award to the plaintiff. The decision of the Workers' Compensation Court finding that Gilbert suffered an injury arising out of and in the course of his employment is clearly wrong. The Workers' Compensation Court panel's decision is, therefore, reversed, and the award is set aside. The cause is remanded to the Workers' Compensation Court with instructions to dismiss Gilbert's petition.

In view of our holding, it is not necessary to discuss Gilbert's assignments of error.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.

GRANT, J., dissenting.

I must respectfully dissent from the conclusion reached by the majority. As stated in the majority opinion, in reviewing a case from the Workers' Compensation Court, we must give the findings of fact made by that court the same effect as a jury verdict in a civil case, and such findings will not be set aside unless they are clearly wrong. *Kuticka v. University of Nebraska-Lincoln,* 227 Neb. 565, 418 N.W.2d 593 (1988). The panel found that plaintiff's disability was caused by an accident arising out of and in the course of his employment.

Plaintiff did a variety of jobs. In the job which required operating the squeezer, plaintiff would go through the operation requiring activating the knee paddles on 250 or 260

smaller jobs per day, or 130 to 175 daily operations on larger jobs. In the course of each operation, plaintiff would activate the right paddle three times and the left paddle twice on the average. The trauma resulting from this continual knee action first resulted in the doctor's advising plaintiff to wear kneepads to strike the paddles. Surgery eventually followed.

Plaintiff's treating doctor testified that "the causes were the folds in the lining of the [knee] joint and the tightness of the support tissues to the outside of the kneecap." The doctor further testified:

I think his symptoms were sort of the accumulative affect [sic] of his work activities. He did have some minor injuries, but I can't say that I can look back historically at any one of them as the initiating event.

Basically, I have to go on what Mr. Gilbert told me. From what I could assess, this was sort of an accumulative affect [sic] of work and use of his legs in his work activities.

Q Among the activities that he had described, the twisting, the squatting and the pushing the pads and whatever the other ones were, is it your opinion that each of them or any particular one of them were the contributing causes?

A I don't know that I could specify any one of them.

While the doctor could not testify exactly what work activity was a contributing cause of the injury, the fact remains that the doctor testified plaintiff's symptoms were "sort of an accumulative affect [sic] of work and use of his legs in his work activities."

The record also shows that, on cross-examination, plaintiff's doctor responded to the question, "[C]an a person become symtomatic [sic] by doing the things that a human being does in ordinary life, driving an automobile, walking, standing, sitting, squatting?" by testifying, "Yes, they can." It is also clear that defendant's doctor testified generally that no one could pinpoint the cause of plaintiff's injury between ordinary activities and work activities. Nonetheless, although the cross-examination of plaintiff's doctor attacked the doctor's credibility, and although defendant's doctor contradicted

plaintiff's doctor, I believe the credibility of plaintiff's doctor was for the panel and that there was sufficient evidence before the panel to sustain the determination of the panel that plaintiff's disability was caused by his work activities. I would not set aside the award of the panel as being clearly wrong.

WHITE and SHANAHAN, JJ., join in this dissent.