JANET FUGLSANG, APPELLEE, V. BLUE CROSS OF WESTERN IOWA
AND SOUTH DAKOTA, AN IOWA CORPORATION, ET AL., APPELLANTS.
456 N.W.2d 281

Filed June 8, 1990.   No. 88-520.

Paul D. Lundberg, of Shull, Cosgrove, Hellige, Kudej & Du Bray, for appellants.

David A. Domina, of Domina, Gerrard, Copple & Stratton, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

WHITE, J.

The defendants (hereafter Blue Cross) appeal from a jury verdict for $29,410.60 in favor of the plaintiff, Janet Fuglsang, in her action to recover benefits under a major medical health insurance policy. The district court for Madison County also awarded plaintiff attorney fees in the amount of $10,884.82.

Fuglsang was diagnosed on July 1, 1986, as suffering from myasthenia gravis, a disease which affects different muscle groups of the body and results in weakness, but not in sensory loss or pain. Blue Cross contends that Fuglsang's condition existed prior to her effective coverage date, and it therefore denied coverage under the following policy language:

Until a person to whom service is rendered has been a Member for eleven consecutive months immediately prior thereto, covered services to be paid for by The Plan(s)

shall not be available for:

A. Any illness or injury or other condition existing prior to said person becoming a Member or which progressed or developed from or was a complication of or secondary to any illness or injury or other condition existing prior to said person becoming a Member; or

B. Any illness or injury or other condition for which medical or surgical treatment or advice was rendered within one (1) year prior to said person becoming a Member.

The parties dispute the effective coverage date of the policy, which Fuglsang obtained through her employer in Yankton, South Dakota. Fuglsang contends that coverage began in February 1986, while Blue Cross argues that the policy became effective in June 1986. Whether coverage commenced in February or June makes little difference in this case, for Blue Cross argues that Fuglsang's condition existed and was capable of diagnosis as early as January 1986, prior to both of the asserted coverage dates.

On January 9, 1986, Fuglsang saw Dr. Tom Surber, a family physician in Norfolk. She complained of difficulty with swallowing, chewing, and moving her tongue, and weakness of the muscles of the arms and legs. Dr. Surber knew that Fuglsang was taking a thyroid medication which was necessitated by the removal of her thyroid some years earlier. A series of tests indicated that there was not enough thyroid in her body, so Dr. Surber adjusted her medication and advised Fuglsang to let him know if she did not feel better.

Fuglsang testified that she felt fine from February through May, but that symptoms similar to those mentioned above returned in June, so she contacted Dr. Surber on June 27. Dr. Surber referred her to Dr. Simons, an ear, nose, and throat specialist in Omaha. Dr. Simons hospitalized her and referred her to a neurologist, Dr. Goldner. Upon seeing Fuglsang on July 1, 1986, and noting the symptoms that she displayed, Dr. Goldner's diagnosis was that she had myasthenia gravis. He administered a Tensilon test, which is used to prove the diagnosis, and the result was markedly positive.

At trial the deposition testimony of Dr. Goldner was read

into the record. Blue Cross asked several questions of Dr. Goldner designed to elicit his opinion of whether Fuglsang's myasthenia gravis existed or could have been diagnosed on January 9, 1986. The trial court sustained several of Fuglsang's objections to these questions, and, thus, Dr. Goldner was not allowed to answer them.

The central issue in the trial was whether the myasthenia gravis was in fact a preexisting condition which relieved Blue Cross from liability under the terms of the policy.

Blue Cross filed a motion for new trial after the entry of the verdict and judgment. The motion was denied, and this appeal was taken. Blue Cross assigns error to the district court in (1) excluding expert medical testimony of whether Fuglsang suffered from myasthenia gravis prior to the effective coverage date of the policy and whether the condition could have been diagnosed prior to the coverage date, (2) tendering an erroneous instruction to the jury, (3) overruling its motion for new trial, (4) overruling its pretrial motion for summary judgment, and (5) awarding Fuglsang attorney fees pursuant to Neb. Rev. Stat. § 44-359 (Reissue 1988).

## EXPERT TESTIMONY

Blue Cross assigns error to the trial court's exclusion of certain expert medical testimony by Drs. Goldner and Koob. A trial court's ruling in receiving or excluding an expert's opinion will be reversed only when there has been an abuse of discretion. *Aetna Cas. & Surety Co. v. Nielsen*, 222 Neb. 92, 382 N.W.2d 328 (1986); *Priest v. McConnell*, 219 Neb. 328, 363 N.W.2d 173 (1985); *State v. Miner*, 216 Neb. 309, 343 N.W.2d 899 (1984).

Blue Cross attempted to elicit Dr. Goldner's testimony by asking him to rest his opinion on the question "on a 50/50 basis, is it more likely than not that . . . ?" We have encountered medical testimony in workers' compensation cases regarding causation of injury where the expert's opinion is offered in terms of "more likely" (than not).

In *Husted v. Peter Kiewit & Sons Constr. Co.*, 210 Neb. 109, 313 N.W.2d 248 (1981), we said that a physician's opinion, which amounted to no more than a statement that it was "more

likely" the injury occurred on the date of the accident than when the worker was at bed rest following the accident, lacked the definiteness and certainty necessary for it to be the basis for a compensation award (citing *Camarillo v. Iowa Beef Processors, Inc.*, 201 Neb. 238, 266 N.W.2d 917 (1978), and *Marion v. American Smelting & Refining Co.*, 192 Neb. 457, 222 N.W.2d 366 (1974)). In *Husted* we held that "[a] workmen's compensation award cannot be based upon possibility or speculation. If an inference favorable to the claimant can only be reached upon the basis of possibility or speculation, he cannot recover. An award cannot be based upon conflicting inferences of equal degrees of probability." 210 Neb. at 113-14, 313 N.W.2d at 251.

In this case Dr. Goldner would have testified, if allowed, that myasthenia gravis possibly could have been diagnosed in January 1986; that there was a possibility that Fuglsang's condition was related to her thyroid problem, which could, to some extent, mimic symptoms of myasthenia gravis; and that Fuglsang probably did have myasthenia gravis then, but one could not be certain and could also suspect other things such as hypothyroidism.

The conflicting inferences raised by Dr. Goldner's testimony must render any opinion "on a 50/50 basis . . . more likely than not" as speculative and lacking in the requisite definiteness and certainty. Just as a workers' compensation award cannot be based on speculative evidence, neither should a jury be allowed to base a verdict on such expert testimony. We cannot say that the district court abused its discretion in excluding certain opinions of Dr. Goldner's, nor was it an abuse of discretion to exclude the opinion of Dr. Koob as speculative and lacking foundation.

In our ruling today, we reaffirm the standard that expert medical testimony must be based on a reasonable degree of medical certainty or a reasonable probability, and we decline to extend that standard further. See, *Lane v. State Farm Mut. Automobile Ins. Co.*, 209 Neb. 396, 308 N.W.2d 503 (1981); *Marion v. American Smelting & Refining Co., supra; Welke v. City of Ainsworth*, 179 Neb. 496, 138 N.W.2d 808 (1965).

## JURY INSTRUCTION

Blue Cross also assigns error to the trial court in submitting instruction No. 11 to the jury, which in pertinent part reads: "A 'disease', 'condition' or illness exists within the meaning of a health insurance policy excluding pre-existing conditions only at such time as the 'disease', 'condition' or illness becomes known to the insured or is capable of being diagnosed by a physician." Blue Cross objects to the instruction on the bases that (1) "known to the insured" is not an accurate statement of the law and (2) it was not allowed to offer any evidence on the "capable of diagnosis" part of the test.

Blue Cross argues that the law in Nebraska is that a disease exists not when it becomes known to the insured, but when it becomes *manifest*, as stated in *Mills v. Aetna Ins. Co.*, 168 Neb. 612, 96 N.W.2d 721 (1959). The terms are actually synonymous. In *American Sun Life Ins. Co. v. Remig*, 482 So. 2d 435 (Fla. App. 1985), the following definition of "manifest" was adopted: " 'A condition, not otherwise diagnosed, is manifest when the insured *knew or should have known* of the existence of his illness because he was experiencing symptoms that would lead a reasonable person to seek a medical diagnosis.' " (Emphasis supplied.) *Id*. at 436.

The policy served by such an instruction is enunciated in *Mutual Hosp. Ins., Inc. v. Klapper et ux.*, 153 Ind. App. 555, 560, 288 N.E.2d 279, 282 (1972):

> The majority rule recognizing a disease only to be in existence when it first manifests itself or is known to the victim or is capable of being diagnosed by a physician serves the dual purpose of protecting insurers from fraudulent applicants seeking coverage for known diseases while protecting innocent premium-paying insureds from being deprived of benefits for pre-existing conditions of which they have no knowledge. *Ray* v. *Hospital Care Ass'n.* (1952), 236 N. C. 562, 73 S. E. 2d 475; *Randa* v. *Bear* (1957), 50 Wash. 2d 415, 312 P. 2d 640.

It was, in fact, the symptoms that Fuglsang was experiencing which led her to seek diagnosis from Dr. Surber on January 9, 1986. It happened that Dr. Surber's diagnosis and treatment were for her thyroid condition. Blue Cross' objection to

instruction No. 11 as an incorrect statement of law merely because it contained the words "known to the insured" as opposed to "manifest" is without merit.

Blue Cross' objection to the "capable of diagnosis" part of the test is also without merit. An instruction should be given only on issues which are pled and find support in the evidence. *Crewdson v. Burlington Northern RR. Co.*, 234 Neb. 631, 452 N.W.2d 270 (1990); *Dotzler v. Tuttle*, 234 Neb. 176, 449 N.W.2d 774 (1990). The capability of diagnosis of myasthenia gravis was put in issue by Dr. Surber's testimony. Blue Cross' objection to that part of the instruction because its medical testimony was excluded simply amounts to an objection to the trial court's evidentiary rulings, which we have just affirmed.

All jury instructions given must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating a reversal. *Denesia v. St. Elizabeth Comm. Health Ctr., ante* p. 151, 454 N.W.2d 294 (1990); *Crewdson v. Burlington Northern RR. Co., supra*; *Dotzler v. Tuttle, supra.* In order to establish reversible error upon a trial court's giving of a certain instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *Denesia v. St. Elizabeth Comm. Health Ctr., supra; Rose v. City of Lincoln*, 234 Neb. 67, 449 N.W.2d 522 (1989).

The evidence presented required the jury to find whether Fuglsang's symptoms on January 9, 1986, were a result of a preexisting, undisclosed condition or disease, and the verdict indicates a finding that they were not. We find no prejudice necessitating a reversal.

While we determined that instruction No. 11 was not an incorrect statement of the law, we note here that our review of the applicable case law indicates that a better statement of the rule is: A disease, condition, or illness exists within the meaning of a health insurance policy excluding preexisting conditions only at such time as the disease, condition, or illness is manifest or active or when there is a distinct symptom or condition from which one learned in medicine can with reasonable accuracy

diagnose the disease. See, e.g., *Mutual Hosp. Ins., Inc. v. Klapper et ux., supra; Bishop v. Capitol Life Ins. Co.*, 218 Kan. 590, 545 P.2d 1125 (1976); *Southrds v. Central Plains Ins. Co.*, 201 Kan. 499, 441 P.2d 808 (1968); *American Family Ins. Group v. Blake*, 439 N.E.2d 1170 (Ind. App. 1982); *Dowdall v. Commercial Travelers Mutual Accident Association*, 344 Mass. 71, 181 N.E.2d 594 (1962).

## ATTORNEY FEES

Blue Cross assigns error to the trial court's order approving Fuglsang's application for attorney fees in the amount of $10,884.82.

Blue Cross argued in its special appearances that it is an unauthorized insurer, and in its brief claims that the applicable statute regarding attorney fees is Neb. Rev. Stat. § 44-137.07 (Reissue 1988), which allows for a reasonable attorney fee not to exceed $12\frac{1}{2}$ percent of the plaintiff's recovery if it appears to the court that the insurer's refusal to pay was vexatious and without reasonable cause.

Fuglsang claims in her brief that she was entitled to an award of attorney fees under § 44-359, which states:

> In all cases when the beneficiary or other person entitled thereto brings an action upon any type of insurance policy . . . against any company, person, or association doing business in this state, the court, upon rendering judgment against such company, person, or association, shall allow the plaintiff a reasonable sum as an attorney's fee in addition to the amount of his or her recovery, to be taxed as part of the costs.

We first note that the special appearances of Blue Cross were overruled by the trial court, and the propriety of that ruling is not assigned as error on appeal.

It is clear that Blue Cross is a foreign corporation. Whether it is an unauthorized insurer within the meaning of Neb. Rev. Stat. § 44-137.01 (Reissue 1988) is simply not to be ascertained from the record. The record is silent. We note further that even if Blue Cross is a foreign, unauthorized insurer, jurisdiction is granted to the district courts of this state by the specific terms of Neb. Rev. Stat. § 44-137.02 (Reissue 1988).

In order for Blue Cross to prevail on its contention that it is entitled to the more favorable attorney fee provisions of § 44-137.07, it must be clear that it qualifies under that statute. It did not so establish that applicability.

## CONCLUSION

The trial court correctly applied the provisions of § 44-359. The order allowing attorney fees is affirmed.

The appellee is allowed a further award of $2,500 for services of her attorney in this court.

AFFIRMED.