BERTHA L. HOHNSTEIN, APPELLEE, v. W.C. FRANK, A CORPORATION, AND U.S. INSURANCE GROUP, AN INSURANCE CORPORATION, APPELLANTS.

468 N.W.2d 597

Filed April 25, 1991.   No. 90-957.

Melvin C. Hansen, of Hansen, Engles & Locher, P.C., for appellants.

Robert M. Brenner, of Robert M. Brenner Law Office, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

W.C. Frank, a corporation, as employer, and its insurer, U.S. Insurance Group, appeal a Workers' Compensation Court order increasing Bertha L. Hohnstein's compensation benefits. We affirm.

This action was brought pursuant to Neb. Rev. Stat. § 48-141 (Cum. Supp. 1990), which provides that any award payable periodically to an injured employee may be modified after 6 months from the date of the award, where there is an increase in incapacity due solely to the injury.

The appellants' two assignments of error merge to allege that the majority of a workers' compensation rehearing panel erred in awarding Hohnstein benefits for an increase in incapacity and for medical expenses occurring subsequent to entry on February 1, 1989, of her original workers' compensation award.

In reviewing the decision of the Nebraska Workers' Compensation Court, this court is guided by the following principles: "The findings of fact made by the Nebraska Workers' Compensation Court on rehearing have the same force and effect as a jury verdict in a civil case and will not be reversed or set aside unless clearly wrong. [Citations omitted.]" *Neneman v. Falstaff Brewing Corp., ante* p. 421, 422, 466 N.W.2d 97, 98 (1991). "In testing the sufficiency of the evidence to support the findings of fact made by the Workers' Compensation Court after rehearing, the evidence must be

considered in the light most favorable to the successful party. [Citations omitted.]" *Id.* A finding upon rehearing by the Workers' Compensation Court regarding whether an applicant's incapacity has increased under the terms of § 48-141 is a finding of fact. See, *Gomez v. Kenney Deans, Inc.*, 232 Neb. 646, 441 N.W.2d 632 (1989); *Grauerholz v. Cornhusker Packing Co.*, 230 Neb. 641, 432 N.W.2d 831 (1988).

On December 7, 1988, a single judge of the Workers' Compensation Court held a hearing on Hohnstein's petition for workers' compensation benefits. In her petition, filed on April 21, 1988, Hohnstein prayed for benefits to be awarded as the result of a May 10, 1983, accident arising out of and in the course of her employment with W.C. Frank. The appellants voluntarily paid Hohnstein temporary total disability benefits through September 19, 1986, and paid medical bills incurred by Hohnstein in the amount of $15,474.38. After that hearing, a single judge of the Workers' Compensation Court entered an order on February 1, 1989, which was not appealed. The one-judge court found:

The issues involved in this case are the relationship of plaintiff's injuries incurred on October 2, 1986, to the original incident [and] the extent of plaintiff's disability
. . . .

The evidence in this case is that the plaintiff has had extensive problems with her right knee dating back to 1972. In 1972, the plaintiff was run over by a drunk[en individual] on a horse, and suffered injuries to her knees for which surgery was subsequently performed in 1975. The plaintiff apparently recovered from this incident, and on May 10, 1983, plaintiff injured her right knee when she slipped on some ice at her place of employment [at W.C. Frank] while cutting a cake for a children's birthday party, and injured her right knee. On November 9, 1983, plaintiff underwent a total right knee replacement. On November 2, 1985, plaintiff underwent surgery for removal of a staple and a bony prominence on the right knee. On June 7, 1985, plaintiff underwent surgery for replacement of portions of the right knee prosthesis. On December 2, 1986, the plaintiff underwent surgery for

replacement of the floating patellar button on the right knee. The above dates and surgeries are the main treatment dates, however, the plaintiff additionally has a very extensive [history of] hospital, doctor's . . . and emergency room visits for other problems that she has had with this right knee. . . . On October 2, 1986, the plaintiff slipped and incurred a chipped bone to her left foot for which a leg cast was applied. The Court finds . . . that the October 2, 1986 fall was directly related to the previous accident and subsequent surgery due to the surgical instability on the right knee which caused the fall, and that the defendants should be responsible for the medical expenses and temporary total disability from that date.

The court further found that as a result of the accident of May 10, 1983, Hohnstein was temporarily totally disabled for $122^2/7$ weeks and sustained a 10-percent permanent partial disability to the right lower extremity. The court based its finding of a 10-percent permanent partial disability on medical expert testimony that Hohnstein had a 40-percent loss of physical function, of which 30 percent was attributable to the 1972 accident and 10 percent to the 1983 incident. The court ordered that the appellants pay certain of Hohnstein's past and future medical expenses. The appellants did not appeal the February 1, 1989, order and it became final.

On June 21, 1989, as Hohnstein, who was employed at the Skyport Restaurant in Scottsbluff as a cook and waitress, was walking to her car in a parking lot after work, her right knee "gave out," and she fell. Prior to June 21, Hohnstein had been experiencing pain and instability in her right knee. She described the instability as causing her right knee to "give way," resulting in her "grab[bing] something to keep from going down." There was evidence that the parking lot had a level black surface. Hohnstein testified that June 21 was a clear day and that there were no obstructions.

After her fall of June 21, Hohnstein contacted her doctor. She received a cortisone shot in her right knee on June 22. Because of continuing pain in that knee, Hohnstein went to a hospital emergency room in the early morning hours of June 23 and again that evening. Hohnstein underwent a right knee

arthroscopy and partial synovectomy on July 5, 1989. The knee was again totally replaced on September 21, 1989.

On September 18, 1989, Hohnstein filed an application to modify the award entered on February 1, 1989, "on the ground of an increase in incapacity due solely to the [May 10, 1983,] injury." A single judge of the Workers' Compensation Court found that Hohnstein's knee problems encountered after February 1, 1989, were a result of her injury suffered on May 10, 1983, and that there had been a material and substantial change in her condition. As a result, the judge awarded Hohnstein temporary total disability benefits from and including June 22, 1989, for so long as she would remain totally disabled and ordered the appellants to pay the medical expenses set forth in the order. The order was entered on February 20, 1990.

The appellants timely appealed that order to a rehearing panel of the Workers' Compensation Court. At the time of rehearing on April 17, 1990, Hohnstein had not worked and had been on crutches since June 21, 1989. At the rehearing, Hohnstein testified that her right knee was very sore, swollen, painful, and unstable. She further testified that since the date of her original award, she had not suffered any injuries or accidents which affected her right knee. At the time of the rehearing, Hohnstein's physician was considering a fusion operation which would entail joining the femur and tibia as one bone by a bone grafting. A fusion would totally remove any joint function, so that Hohnstein would walk with an entirely stiff-kneed gait. On September 19, 1990, a majority of the rehearing panel affirmed as modified the order of the single judge. In substance, the modification increased the weekly benefits by $2 and changed the amount payable for medical bills.

As stated, the statutory authority for this action is § 48-141. Under § 48-141, an applicant seeking modification of a worker's compensation award must prove by a preponderance of the evidence that the increase in his or her incapacity is due *solely* to the injury resulting from the original accident. *Gomez v. Kenney Deans, Inc.*, 232 Neb. 646, 441 N.W.2d 632 (1989).

In proving an increase in incapacity, the applicant must

prove by a preponderance of the evidence that "there now exists a material and substantial change for the worse in the applicant's condition—a change in circumstances that justifies a modification, distinct and different from that for which an adjudication had been previously made."
*Id.* at 648, 441 N.W.2d at 634 (quoting *Wilson Concrete Co. v. Rork,* 216 Neb. 447, 343 N.W.2d 764 (1984)). As applied to this case, the issue for the Workers' Compensation Court was whether Hohnstein sustained an increase in disability since the court's award of February 1, 1989, which was due solely to her injury of May 10, 1983.

The appellants do not dispute that Hohnstein adduced sufficient evidence to support the Workers' Compensation Court's award regarding the question of whether there existed a material and substantial change for the worse in her condition. It is sufficient to restate that after the original award was entered, Hohnstein had undergone a right knee arthroscopy and total knee replacement, and a fusion operation was likely. The appellants' contention in this appeal is that the medical expert testimony adduced failed to show that Hohnstein's worsened condition was caused solely by the employment-related accident of May 1983.

The appellants' argument necessarily raises the question of whether medical expert evidence was required in order for Hohnstein to prove that her increase in incapacity was due solely to the 1983 accident. It is well established that "unless the character of an injury is plainly apparent, an injury is a subjective condition, and an expert opinion is required to establish the causal relationship between an incident and the injury as well as any claimed disability consequent to such injury. [Citations omitted.]" *Sherwood v. Gooch Milling & Elevator Co.,* 235 Neb. 26, 34, 453 N.W.2d 461, 467 (1990). Accord, *Fees v. Rivett Lumber Co.,* 228 Neb. 617, 423 N.W.2d 483 (1988); *Mendoza v. Omaha Meat Processors,* 225 Neb. 771, 408 N.W.2d 280 (1987); *McCann v. Holy Sepulchre Cemetery Assn.,* 205 Neb. 444, 288 N.W.2d 45 (1980). When the subject matter is wholly scientific or so far removed from the usual and ordinary experience of the average man that expert knowledge is essential to the formation of an intelligent opinion, only an

expert can competently give opinion evidence as to the cause of the physical condition. *McCann, supra*. The pathological cause of an ailment is a scientific question upon which it is necessary to obtain scientific knowledge, and only the opinions of experts are of value. *Id*. It has also been asserted:

> [W]here the claimed injuries are of such a character as to require skilled and professional persons to determine the cause and extent thereof, the question is one of science. Such a question must necessarily be determined from testimony of skilled professional persons and cannot be determined from the testimony of unskilled witnesses having no scientific knowledge of such injuries. The employee must show by competent medical testimony the causal connection between the alleged injury, the employment, and the disability.

*Hamer v. Henry*, 215 Neb. 805, 809, 341 N.W.2d 322, 325 (1983).

The record reflects that Hohnstein's knee operation was "complicated by a rather serious condition of morbid obesity." Recalling that the hearing which resulted in the award of February 1, 1989, was had on December 7, 1988, it is noteworthy that on December 10, 1988, Hohnstein fell, resulting in pain and spasm in her lower back. It is simply beyond the ken of laypersons what effect the obesity and back injury had on the internal workings of Hohnstein's right knee. The fact that Hohnstein was overweight during the period of time for which she received treatment for her knee does not detract from the need for medical expert testimony on the issue at hand. Even without those further complications, medical expert testimony was required to show that the giving way of Hohnstein's knee on June 21, 1989, was due to the work-related accident of May 10, 1983. The pathological cause of Hohnstein's right knee problems suffered after the entry of the original award as those problems related to her employment accident in 1983 presented a scientific question upon which it was necessary to obtain medical expert evidence.

Next to be considered is whether Hohnstein's medical expert evidence sufficiently demonstrated the causal connection between the 1983 accident at W.C. Frank and her increased

incapacity suffered after February 1, 1989. In the recent case of *Fuglsang v. Blue Cross*, 235 Neb. 552, 555, 456 N.W.2d 281, 284 (1990), this court asserted, "[W]e reaffirm the standard that expert medical testimony must be based on a reasonable degree of medical certainty or a reasonable probability, and we decline to extend that standard further. [Citations omitted.]" That rule flows from the requirement that a decision cannot be based upon guess or speculation. *Fuglsang, supra.* While we reassert that the foregoing language of *Fuglsang* is the preferred formulation of the test, a medical expert's testimony need not be couched in the magic words "reasonable degree of medical certainty or a reasonable probability." In *Lane v. State Farm Mut. Automobile Ins. Co.*, 209 Neb. 396, 411, 308 N.W.2d 503, 512 (1981), we explained:

> Although it is generally stated that medical testimony must be given with "reasonable medical certainty," we have been unable to find any Nebraska case which specifically so states. It has frequently been held that medical testimony couched in terms of "possibility" is not sufficient, although when such testimony is in terms of "probability" it is sufficient.

See, also, *Hare v. Watts Trucking Service*, 220 Neb. 403, 370 N.W.2d 143 (1985); *Welke v. City of Ainsworth*, 179 Neb. 496, 138 N.W.2d 808 (1965). It is wise to recall:

> In the area of certain disabilities it is impossible for a reputable doctor to testify with absolute certainty that one cause and one cause alone is the reason for the disability. Medical diagnosis is not that exact a science. Even though in most instances a certain result may follow, to be accurate the medical expert hedges by the use of the words "probably due."

*Welke, supra* at 502-03, 138 N.W.2d at 812. In the final analysis, for medical testimony to be the basis for an award, it must be sufficiently definite and certain that a conclusion can be drawn that there was a causal connection between the accident and the disability. *Gilbert v. Sioux City Foundry*, 228 Neb. 379, 422 N.W.2d 367 (1988).

The principal medical expert evidence on the issue at hand was the depositional testimony of Dr. Paul Phillips. Dr. Phillips

is an orthopedic physician who had been treating Hohnstein's knee since 1983. Dr. Phillips testified that his answers were based on a reasonable degree of medical probability or certainty. Regarding the present issue, Dr. Phillips testified:

Q. . . . [W]as her [Hohnstein's] condition as you examined it in '89 and '90 now all tied back the same way to the May 10th of '83 fall? I mean, was there any new accident, any new injury that occurred?

A. No, there were no other new injuries that I know of.

. . . .

Q. And I want to understand some of the—what the answers to the questions that Mr. Hansen posed to you, he was always posing them back to May 10th of '83, and whether you're guessing at what could have happened or not happened, these injuries or this condition and the surgeries, her condition she's in today, were these all, in your medical opinion to a reasonable degree of medical probability, a result of the fall of May 10th of '83?

. . . .

A. Well, she certainly has had these problems after the fall and one would assume they were causally related.

In essence, Dr. Phillips' recited testimony is that nothing occurred after entry of the award in February 1989 that would have caused the problems Hohnstein later experienced and that Hohnstein's knee problems were causally related to the compensable accident of 1983. The foregoing testimony was sufficiently definite and certain that a conclusion can be drawn that there was a causal connection between the 1983 accident and knee problems which Hohnstein was encountering at the time of this modification action. Admittedly, Dr. Phillips testified at times during his deposition that due to Hohnstein's knee injuries suffered before 1983, he could not state with a reasonable degree of medical certainty or probability that her knee problems occurring after her original award were caused solely by the accident of 1983. For two reasons, this is of no consequence. First, since it was not appealed, the parties were bound by the compensation court's February 1, 1989, order, wherein the court found that Hohnstein had recovered from her pre-1983 knee injury and that Hohnstein's knee problems

occurring between May 10, 1983, and the hearing date of December 7, 1988, were the result of the May 10, 1983, accident at W.C. Frank. See *Gottsch v. Bank of Stapleton*, 235 Neb. 816, 458 N.W.2d 443 (1990) (when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in a future lawsuit). Therefore, Dr. Phillips' testimony regarding the effect of Hohnstein's 1972 accident on her condition at the time of rehearing was irrelevant. Second, an expert witness' good faith self-contradiction presents a question of fact to be resolved by the Workers' Compensation Court. *Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 461 N.W.2d 565 (1990); *Vredeveld v. Gelco Express*, 222 Neb. 363, 383 N.W.2d 780 (1986).

Considering the evidence in the light most favorable to Hohnstein, we determine that the record reflects that the panel majority was not clearly wrong in finding that Hohnstein's increase of incapacity was due solely to the accident at W.C. Frank in 1983. Accordingly, its judgment is affirmed. Hohnstein is further awarded attorney fees in the amount of $2,500 for the services of her attorney in the appeal to this court. See Neb. Rev. Stat. § 48-125 (Reissue 1988).

AFFIRMED.