IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


WILLIAMS V. EGS APPLETON


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


MICHAEL WILLIAMS, APPELLEE,

V.

EGS APPLETON, APPELLANT.


Filed April 7, 2015.    No. A-14-705.


Appeal from the Workers' Compensation Court: J. MICHAEL FITZGERALD, Judge. Affirmed in part, and in part reversed.

Timothy E. Clarke, of Baylor, Evnen, Curtis, Grimit & Witt, L.L.P., for appellant.

Joseph C. Dowding and Jeffrey A. Bloom, of Dowding, Dowding, Dowding & Urbom, for appellee.


MOORE, Chief Judge, and IRWIN and RIEDMANN, Judges.

MOORE, Chief Judge.

EGS Appleton (EGS) appeals the Workers' Compensation Court's award of further benefits to Michael Williams. EGS claims the compensation court erred in making a further award to Williams because there was insufficient evidence to establish that Williams' increase in incapacity was due solely to his previous workplace injuries. EGS further contends that the compensation court erred by awarding future medical benefits and failed to issue a well-reasoned opinion. We find that the compensation court clearly erred in finding that Williams' shoulder injury was solely due to his previous workplace injuries and reverse that portion of the award. Similarly, because Williams' shoulder injury was not solely due to a work-related injury, he is not entitled to future medical care for that injury. We affirm the remainder of the award.

- 1 -

## FACTUAL BACKGROUND

In 2009, the Workers' Compensation Court awarded Williams benefits as a result of the injuries he suffered from two separate accidents while working for EGS in its Columbus, Nebraska plant. Specifically, Williams suffered a lower back injury in 2004 and an injury to his right foot in 2006. The compensation court concluded Williams suffered a 15 percent permanent loss of earning power due to the back injury and a 19 percent permanent loss of earning power from the foot injury. However, the court later determined that these two separate injuries could not be combined to produce a single loss of earning power. The court awarded Williams 300 weeks of permanent partial disability in the amount of $50.92 per week for his back injury, reimbursement of medical costs, and future medical care to treat both injuries. Neither party appealed this award.

After he received treatment for his injuries, Williams was able to resume working at EGS. When he returned to work, Williams required the use of a cane to walk. Because of this physical limitation, Williams was not able to maintain his former position as a set-up operator. To accommodate Williams' limitation, EGS placed Williams in the lab metal department. In this position, Williams applied a putty-like substance to holes in parts before they were painted. Williams was able to perform the work required in the lab metal department as long as he had help from coworkers with lifting the heavier parts. Williams' position in the lab metal department was a full-time position.

In August 2010, Williams' employment was terminated because EGS moved its Columbus plant to Mexico. Thereafter, Williams received unemployment benefits while he attempted to find other employment. Williams' search for subsequent employment has not been successful and he has remained unemployed since his termination from EGS. He began receiving Social Security disability benefits in February 2011 and was in the process of taking classes with the goal of obtaining his GED. Williams struggles with a reading disability which led to him dropping out of school after the tenth grade.

On December 12, 2011, Williams filed a petition for modification. Within the petition, Williams alleged that he had "suffered a material and substantial increase in his incapacity" due to the original injuries. He claimed that he had developed severe depression, increased low back pain, and increased right foot pain, all of which were due solely to his original, compensable injuries.

On September 5, 2013, Williams amended his petition for modification to include an additional cause of action, seeking additional benefits because of a recent shoulder injury which occurred when he slipped and fell on May 19, 2013. He claimed that this fall and injury were solely due to his right foot and low back injury. As to both causes of action, Williams sought an award of permanent total disability, vocational rehabilitation benefits, payment of outstanding medical bills, and future medical care for all three injuries. Williams also sought waiting time penalties and reasonable attorney fees.

In its answer, EGS admitted that Williams had been awarded benefits in 2009, but denied the remaining allegations. EGS sought to have Williams' petition for modification dismissed.

On February 11, 2014, the Workers' Compensation Court held a hearing on Williams' petition for modification. At this hearing, Williams testified to the increased pain he had experienced since the trial in 2009. Williams stated that the pain in both his back and right foot

had increased to the point where doing many everyday activities was impossible for him. He rated his pain level at a constant 6.75 or 7 on a scale of 1 to 10. Williams also testified to experiencing "jolt[s]" of sharp pain which register as 10 out of 10 on the pain scale. This constant pain has become draining on Williams and his wife testified to having noticed that he now becomes irritated very easily and is much more withdrawn. Nonetheless, Williams conceded during his testimony that he had not received any new or different impairment ratings.

Plagued by constant pain, Williams has become less active and has been unable to exercise frequently. Consequently, he has gained a substantial amount of weight. Around the time of his back injury in 2004, Williams weighed 250 pounds. At the trial in 2009, Williams weighed 282 pounds. At the recent modification hearing, Williams informed the court that his current weight was approximately 357 pounds. Williams acknowledged that his weight likely contributes to his back pain, but claimed that his foot pain has affected the way he walks and limited his ability to exercise.

To manage his pain, Williams has been taking medications as prescribed by Dr. Richard Bose, who is board certified in the subspecialty of pain medicine. Bose has administered a number of injections to Williams' right foot in an effort to control Williams' pain. In 2010, Bose became concerned that Williams had developed hypogonadism as a result of the medications he was taking. Later tests revealed that Williams' testosterone levels were low, so Dr. Bose prescribed Testim for testosterone replacement. While on Testim, Williams developed an enlarged breast, or gynecomastia. Williams received further treatment for the breast enlargement from Dr. Robert Anderson.

Williams further testified that his constant pain has led to depression. In explaining the onset of this depression, Williams admitted that losing his job was "devastating" and that the loss of his job affected his outlook on life for a period of time. He stated that he did not realize that it was going to be "that much of a problem" finding a new job. Williams has attended therapy for depression with Dr. Rhonda Somerhiser, a clinical psychologist. Somerhiser has diagnosed Williams with a reading disorder, disorder of written expression, and major depressive order, single episode moderate.

Finally, Williams described the sequence of events that led to his shoulder injury on May 19, 2013. He explained that he was in the garage watching his wife plant flowers in the backyard when he observed her leave a tool in the yard after she finished. Williams decided to help by retrieving the tool. He went through the garage to the side of his house and began to walk down a little grassy slope to the backyard. While on the slope, his cane slipped and Williams landed on his left shoulder. The next morning Williams went to Urgent Care in Columbus and was eventually referred to Dr. Edward Fehringer, an orthopedic surgeon. In June 2013, Fehringer performed surgery on Williams to repair a dislocated long head of the biceps tendon and tearing of the superior border of the subscapularis and the anterior aspect of the supraspinatus. At the time of the hearing, Williams testified that he still had limited use of his shoulder.

On June 13, 2013, Fehringer sent a letter to Williams' attorney in which he opined as to the cause of Williams' slip and fall and resulting shoulder injury. Fehringer specifically wrote:

> More than likely, the slip and fall that resulted in an injury to [Williams'] left shoulder, not his right, was contributed to by his prior right foot and low back injury. Due

to the need for utilization of a cane and his generalized deconditioning, this certainly could have contributed to the fall. The Urgent Care notes from 5-20-13 confirm that this occurred while descending a grassy slope. Dr. Lemke's notes of 5-21-13 suggest a spontaneous origin. [Williams] had related the traumatic episode to me of the grassy slope.

EGS submitted evidence which contradicted Williams' testimony as to his claims of an increase in pain as well as the cause of his shoulder injury. Dr. Jim Andrikopoulos, a board certified neuropsychologist, testified at the hearing to the results of the independent medical evaluation he conducted on Williams in September 2012. During his evaluation of Williams, Andrikopoulos performed three types of tests. First, he performed cognitive tests which measured Williams' attention, concentration, ability to think quickly, language, ability to find words, comprehension, spatial abilities, fine motor dexterity, and grip strength. According to Andrikopoulos, Williams had a number of borderline defective scores on these cognitive tests. These scores suggested that Williams was malingering and had excessive complaints of pain. Second, Andrikopoulos conducted personality tests on Williams. These tests also measured malingering. Again, Andrikopoulos determined that Williams' subjective complaints of pain were excessive. Finally, Andrikopoulos conducted a patient interview of Williams as the third part of his testing. During this interview, Williams answered every question on the brief pain inventory questionnaire regarding his level of pain as being 10 out of 10. Andrikopoulos reported that this level of pain would signify that Williams was an invalid, something which Andrikopoulos found unbelievable. Additionally, Andrikopoulos was concerned that Williams reported his depression began in 2011 when his injuries occurred in 2010. He found Williams' account to be unusual because depression symptoms should be temporally related to the time of injury. Ultimately, based on his testing, Andrikopoulos concluded that Williams was not totally disabled and that Williams' psychological concerns were exaggerated and not related to his work injuries.

EGS also presented a report and two medical questionnaires from Dr. Joel Cotton. Cotton conducted an independent neurological examination of Williams on January 18, 2011. Williams weighed 318 pounds at the time of that examination. From his examination, Cotton concluded that Williams was exaggerating his symptoms of pain and determined that Williams was not totally disabled. In 2013, following Williams' shoulder injury, EGS obtained an additional opinion from Cotton. To reach this opinion, Dr. Cotton reviewed his previous examination of Williams and Williams' medical records, including Fehringer's letter which contained the causation opinion. Cotton concluded that there would be "no reason for [Williams] to slip and fall because of either the 2004 or 2006 injury". He further stated that Williams' obesity and physical deconditioning would have been significant factors for his injury.

On June 7, 2014, the compensation court issued an award. The court denied Williams' requests for additional indemnity benefits for his back and foot injuries because it found no material and substantial change in incapacity that was due solely to the workplace accidents. Similarly, the court denied additional indemnity benefits for Williams' depression because it found the depression was not solely due to the original injuries.

On the other hand, the court did award indemnity benefits for the shoulder injury Williams suffered as a result of his May 19, 2013 slip and fall. In reaching its decision, the court concluded

that Williams' fall was due solely to his original foot injury in 2006. The court reasoned that Williams would not have had the cane which slipped if he had not injured his foot. Further, the court acknowledged the fact that Williams was obese, but found no evidence which addressed what effect the obesity had on Williams' slip and fall. Williams was awarded temporary total benefits of $464.96 per week for the shoulder injury until he reaches maximum medical improvement. In addition to awarding Williams indemnity benefits for the shoulder injury, the court also ordered EGS to pay Williams' future medical expenses related to his shoulder injury, hypogonadism, gynecomastia, continued foot and back pain, and depression related to the foot and back pain.

EGS appeals from the award.

## ASSIGNMENTS OF ERROR

Summarized and condensed, EGS asserts that the Workers' Compensation Court erred by (1) concluding that Williams' May 19, 2013 slip and fall was solely due to Williams' right foot injury; (2) awarding future medical benefits when there was evidence that Williams was malingering; and (3) failing to provide a well-reasoned opinion in compliance with Rule 11.

## STANDARD OF REVIEW

A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Simmons v. Precast Haulers, Inc.*, 288 Neb. 480, 849 N.W.2d 117 (2014). In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court, the findings of fact of the trial judge will not be disturbed on appeal unless clearly wrong. *Id.*

In testing the sufficiency of the evidence to support the findings of fact in a workers' compensation case, every controverted fact must be resolved in favor of the successful party and the successful party will have the benefit of every inference that is reasonably deducible from the evidence. *Id.*

## ANALYSIS

*Award of Benefits for Williams' 2013 Shoulder Injury.*

Neb. Rev. Stat. § 48-141 (Reissue 2010) provides that a party may apply for a modified award "on the ground of increase or decrease of incapacity due solely to the injury." In order to obtain a modification of an award, an applicant must prove, by a preponderance of evidence, that the increase or decrease in incapacity was due solely to the injury resulting from the original accident. *Rader v. Speer Auto*, 287 Neb. 116, 841 N.W.2d 383 (2013). The applicant must prove there exists a material and substantial change for the better or worse in the condition--a change in circumstances that justifies a modification, distinct and different from the condition for which the adjudication has been previously made. *Id.* There is no requirement that an employee reach MMI prior to modification of the award. *Jurgens v. Irwin Indus. Tool Co.*, 20 Neb. App. 488, 825

N.W.2d 820 (2013). A finding that an applicant's incapacity has increased under the terms of § 48-141 is a finding of fact. See *Starks v. Cornhusker Packing Co.*, 254 Neb. 30, 573 N.W.2d 757 (1998); *Hohnstein v. W.C. Frank*, 237 Neb. 974, 468 N.W.2d. 597 (1991).

In the award, the Workers' Compensation Court determined that Williams' fall and shoulder injury were solely due to his right foot injury in 2006. In finding in Williams' favor, the court relied upon *Hohnstein v. W.C. Frank*, *supra*. In *Hohnstein*, the worker was determined to have suffered compensable knee injuries from an accident that occurred on May 10, 1983, as well as a subsequent fall in 1986 that directly related to the 1983 injury. In February 1989, the worker was awarded permanent partial disability for her injuries. On June 21, 1989, the worker suffered additional injury when her right knee "'gave out'" while she was walking in a parking lot, causing her to fall. *Id*. at 978, 468 N.W.2d at 601. The worker filed an application for additional benefits under § 48-141 on the grounds of increased incapacity.

At trial, the worker testified that she had not suffered any injury or accident that affected her right knee between the original award and the June 21, 1989, fall. The worker's doctor also testified that he was not aware of any new injuries after the entry of the award in February 1989 that would have caused the problems the worker later experienced. The doctor specifically stated that "one would assume [the worker's knee problems] were causally related" to the 1983 accident. *Id*. at 983, 468 N.W.2d at 604. Additional evidence presented at trial demonstrated that the worker's knee problems were complicated by morbid obesity. The compensation court awarded the worker additional benefits, and the employer appealed.

The Nebraska Supreme Court affirmed the compensation court's award of further benefits. In its opinion, the court stated that the question it was required to consider was "whether [the worker's] medical expert evidence sufficiently demonstrated the causal connection between the 1983 accident . . . and her increased incapacity suffered after February 1, 1989." *Id*. at 981-82, 468 N.W.2d at 603. The court then reaffirmed the standard that expert medical testimony must be based on a reasonable degree of medical certainty or a reasonable probability. However, the court stated that a medical expert's testimony does not need to be "couched in the magic words 'reasonable degree of medical certainty or a reasonable probability'". *Id*. at 982, 468 N.W.2d at 603. The court went on to explain,

> "In the area of certain disabilities it is impossible for a reputable doctor to testify with absolute certainty that one cause and one cause alone is the reason for the disability. Medical diagnosis is not that exact a science. Even though in most instances a certain result may follow, to be accurate the medical expert hedges by the use of the words 'probably due'."

237 Neb. at 982, 468 N.W.2d at 603. In concluding this portion of its analysis, the court announced, "In the final analysis, for medical testimony to be the basis for an award, it must be sufficiently definite and certain that a conclusion can be drawn that there was a causal connection between the accident and the disability". *Id*. The court held that the worker's medical expert evidence was sufficiently definite and certain that a conclusion could be drawn between the 1983 accident and the knee problems the worker experienced at the time of the modification action.

In addressing the worker's obesity, the Nebraska Supreme Court indicated that it was "beyond the ken of laypersons" to discern what effect the obesity had on the internal workings of the worker's knee. *Id*. at 981, 468 N.W.2d at 603. The court stated that the cause of the worker's knee problems after the entry of the original award as those problems related to the accident in 1983 presented a scientific question upon which it was necessary to obtain medical expert evidence.

The parties disagree on the applicability of *Hohnstein* to the present matter. EGS points out that the employer in *Hohnstein* failed to introduce any of its own medical evidence to contradict the worker's medical evidence. EGS further argues that it presented sufficient evidence to establish that Williams' shoulder injury was not causally related to his foot injury. Conversely, Williams contends that this case is analogous to *Hohnstein* because the obesity in both cases preceded the falls. Additionally, Williams likens his fall to that in *Hohnstein*; both parties were walking when they suddenly fell and neither fall was related to an environmental condition.

As an initial matter, we agree with EGS that the present case differs in certain respects from *Hohnstein*. From our reading of *Hohnstein*, it does not appear the employer in that case adduced any medical evidence as to the cause of the worker's fall or the effect of the worker's obesity on the fall. In this case, however, EGS presented an opinion from Cotton in the form of answers to a medical questionnaire. Cotton attributed Williams' fall and resulting shoulder injury to Williams walking down a grassy slope as well as his preexisting obesity and physical deconditioning. He agreed that Williams' pain may have played a minor role in the slip and fall incident. The existence of the employer's medical evidence in this case certainly causes the question of causation to differ from the causation question in *Hohnstein*.

Additionally, Fehringer's causation opinion in this case, upon which the compensation court relied, differs from the doctor's causation opinion in *Hohnstein*. To recall, in *Hohnstein*, the worker's doctor testified that he was not aware of the worker suffering any injuries to her knee after the 1989 award. The doctor further testified that it could be assumed that the worker's knee problems were causally related to the 1983 accident. In this case, Fehringer's opinion does not go so far as to say that Williams' shoulder injury was causally related to his earlier injuries. He stated in his letter that "[m]ore than likely, the slip and fall that resulted in an injury to [Williams'] left shoulder . . . was *contributed to* by his prior right foot and low back injury" (emphasis added). EGS asserts that Fehringer's opinion is not sufficient to support the award because it mentions other concurrent causes for the fall and shoulder injury, namely, Williams' "generalized deconditioning".

Williams argues that when the entire record is reviewed there is sufficient evidence to establish that his shoulder injury was solely the result of his right foot injury in 2006. He asserts that his testimony regarding the 2013 fall proved that his cane suddenly slipped, causing him to lose his balance and fall. Williams further states that he would not have had this cane if he had not injured his foot in 2006. He cites a physical therapist's medical report from 2010 in which the therapist concluded that Williams would need to use a straight cane for walking to help him with weight bearing. The therapist anticipated that Williams would need this cane for an indefinite period of time.

Addressing the question of his obesity, Williams argues that Cotton's opinion from the medical questionnaire should not be accepted. Williams notes that Cotton last physically observed him in 2011. Therefore, Williams contends that Cotton would not be able to know how he walks, how his weight affects his ability to walk, or how he uses the cane. Williams also asserts that Cotton's report did not specifically state whether the obesity had an effect on the cane slipping.

In determining whether the evidence was sufficient to establish that Williams' fall and resulting shoulder injury was caused by his prior foot injury, our decision in *Hubbart v. Hormel Foods Corp.*, 15 Neb. App. 129, 723 N.W.2d 350 (2006), is instructive. In *Hubbart*, we reviewed a modification award in which the compensation court found that a worker's depression was compensable because her previous injuries were a "significant, contributing cause" of the depression she later developed. *Id.* at 138, 723 N.W.2d at 356. In reaching that conclusion, the trial court relied upon medical reports which indicated that the worker's depression was due in part to her injuries, but was also the result of other situational factors including unemployment, drug use, and a recent criminal arrest and conviction. We reversed the award, finding that the compensation court utilized the incorrect standard for modification of an award; that being that the previous injuries were a significant, contributing cause of the later depression. In reversing the award and remanding for further proceedings, we reaffirmed that an applicant for a modification of an award must prove that the increase in incapacity was due *solely* to the injury resulting from the original accident.

In this case, the compensation court clearly stated that Williams' shoulder injury resulted solely from his right foot injury. Thus, unlike the award in *Hubbart*, the court employed the correct standard in reaching its conclusion. However, similar to *Hubbart*, the court made its determination by relying upon a medical opinion which concluded that Williams' previous work injuries only "contributed to" his shoulder injury. We recognize there is no requirement that certain magic words be included in a medical opinion; nonetheless, a medical opinion which only states that previous injuries more than likely contributed to an increase in incapacity cannot be permitted under a standard which requires the increase or decrease in incapacity to be solely due to the injury resulting from the original accident. Therefore, because Williams cannot establish that his increase in incapacity was solely due to his original injuries, the compensation court's award must be reversed.

*Future Medical Benefits.*

EGS also contends that the compensation court erred when it awarded Williams future medical benefits. The argument related to this assignment of error reveals that EGS' sole contention is that Andrikopoulos' opinion is more credible than Williams' testimony as to Williams' chronic pain and depression.

This argument requires little discussion to resolve. As the trier of fact, the compensation court is the sole judge of the credibility of witnesses and the weight to be given to their testimony. *Kim v. Gen-X Clothing, Inc.*, 287 Neb. 927, 845 N.W.2d 265 (2014). EGS concedes as much; however, EGS argues that there was not sufficient evidence in the record for the court to find Williams' testimony to be credible. We disagree. The compensation court heard live testimony from both Williams and Andrikopoulos and determined that Williams should be awarded future

medical benefits. In making this finding, the court clearly found Williams' testimony as to his pain to be more credible than Andrikopoulos' testimony and written report. This assignment of error is without merit.

However, we do take a moment to clarify that Williams is not entitled to future medical benefits for his shoulder injury. Because we have found that Williams cannot establish that his shoulder injury was solely due to his previous work-related injuries, it follows that he cannot receive future medical benefits for that injury. See *Foote v. O'Neill Packing*, 262 Neb. 467, 632 N.W.2d 313 (2001) (before an order for future medical benefits may be entered, there should be a stipulation of the parties or evidence in the record to support a determination that future medical treatment will be reasonably necessary to relieve the injured worker from the effects of the work-related injury or occupational disease).

*Well-Reasoned Opinion under Rule 11.*

Finally, EGS asserts that the compensation court failed to comply with rule 11(A) because it did not provide a well-reasoned opinion. EGS asserts that the compensation court was required to discuss Andrikopoulos' testimony and written independent medical evaluation in its award but failed to do so.

Rule 11(A) requires the Workers' Compensation Court to write decisions that "provide the basis for a meaningful appellate review." *Jurgens v. Irwin Indus. Tool Co.*, 20 Neb. App. 488, 825 N.W.2d 820 (2013). In particular, the second sentence of rule 11(A) specifies that the workers' compensation judge is required to "specify the evidence upon which the judge relies." See *Jurgens v. Irwin Indus. Tool Co.*, *supra*.

The compensation court specifically detailed the evidence it considered as to each of Williams' conditions before it determined that Williams' was entitled to future medical care. Although the court did not separately address Andrikopoulos' opinion, rule 11(A) does not require a workers' compensation judge to discuss the opinions or evidence upon which he or she does not rely. The award in this case provides a basis for meaningful appellate review and was, therefore, in compliance with rule 11(A). This assigned error is without merit.

CONCLUSION

Williams failed to establish that his shoulder injury was solely due to his prior workplace injuries. For that reason, we reverse the compensation court's award of benefits and future medical expenses for that injury. However, we find the remainder of the court's award was supported by competent evidence and affirm those portions of the award.

AFFIRMED IN PART, AND IN PART REVERSED.