subsequent to the date of the policy are excluded. Because the implied easements remained inchoate, they did not attach to Lot 2 until they were legally recognized by the decree of the district court which was entered September 7, 2010. The date of the title insurance policy was December 31, 2008. Because the implied easements attached subsequent to issuance of the policy, the easements were excluded by the terms of the policy. As a matter of law, Commonwealth did not have a duty to defend or indemnify the Woodles.

CONCLUSION

The provisions of the title insurance policy on Lot 2 did not provide coverage for the easements of ingress and egress for the benefit of Lots 1 and 3. Commonwealth did not violate its contract with the Woodles by denying coverage or indemnification. The district court did not err in sustaining Commonwealth's motion for summary judgment. Finding no merit in the Woodles' assignments of error, we affirm the judgment of the district court.

AFFIRMED.

———————————

MATTHEW KIM, APPELLEE, V. GEN-X CLOTHING, INC.,
AND FARMER'S TRUCK INSURANCE EXCHANGE
(FARMERS), APPELLANTS.

___ N.W.2d ___

Filed April 11, 2014.    No. S-13-802.

1. **Workers' Compensation: Appeal and Error.** A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.

2. ____: ____. In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court, the findings of fact of the trial judge will not be disturbed on appeal unless clearly wrong.

3. **Workers' Compensation: Evidence: Appeal and Error.** In testing the sufficiency of the evidence to support the findings of fact in a workers' compensation

case, every controverted fact must be resolved in favor of the successful party and the successful party will have the benefit of every inference that is reasonably deducible from the evidence.

4. **Workers' Compensation: Words and Phrases.** Temporary disability is the period during which the employee is submitting to treatment, is convalescing, is suffering from the injury, and is unable to work because of the accident.

5. **Workers' Compensation.** Total disability exists when an injured employee is unable to earn wages in either the same or a similar kind of work he or she was trained or accustomed to perform or in any other kind of work which a person of the employee's mentality and attainments could perform.

6. ____. Whether a plaintiff in a Nebraska workers' compensation case is totally disabled is a question of fact.

7. **Workers' Compensation: Appeal and Error.** Where the record presents nothing more than conflicting medical testimony, an appellate court will not substitute its judgment for that of the Workers' Compensation Court.

8. **Workers' Compensation.** As the trier of fact, the Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given their testimony.

Appeal from the Workers' Compensation Court: JAMES R. COE, Judge. Affirmed.

Stacy L. Morris, of Lamson, Dugan & Murray, L.L.P., for appellants.

Dirk V. Block and Steven J. Riekes, of Marks, Clare & Richards, L.L.C., for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, MCCORMACK, MILLER-LERMAN, and CASSEL, JJ.

HEAVICAN, C.J.

## INTRODUCTION

Matthew Kim was employed by Gen-X Clothing, Inc., a retail clothing store. While he was working, the store was robbed. The perpetrators later returned and shot Kim multiple times. Kim was thereafter diagnosed with both posttraumatic stress disorder (PTSD) and chemical dependency. Kim filed for workers' compensation benefits.

Following a hearing, the Workers' Compensation Court found that Kim had not yet reached maximum medical improvement (MMI) and was entitled to temporary total disability (TTD) benefits. In addition, the compensation court found Kim's inpatient treatment for chemical dependency, as well as an

October 2, 2011, emergency room visit, compensable. Finally, the compensation court credited Gen-X Clothing and its insurance carrier, Farmer's Truck Insurance Exchange (Farmers) (hereinafter collectively Gen-X), for prior medical expenses paid and found that Kim was entitled to payment of future medical expenses. Gen-X appeals. We affirm.

## FACTUAL BACKGROUND

Kim was employed as a manager by Gen-X Clothing, a retail clothing store located in Omaha, Nebraska. He was working on June 28, 2011, when he suffered multiple gunshot wounds. The shooting was revenge for the reporting of an earlier robbery at the store. After the shooting, the perpetrators made telephone calls to Kim, further threatening him, his mother, and his son.

In September 2011, Kim began seeing Peter Cusumano, a licensed mental health practitioner and a licensed alcohol and drug counselor. Cusumano evaluated Kim, diagnosed him with PTSD and chemical dependency, and determined that he would benefit from outpatient treatment. Prior to the shooting, Kim drank alcohol and was a recreational drug user. But Kim testified that around the time he began treatment with Cusumano, his use of alcohol and drugs began to increase. Kim testified that he used the alcohol and drugs to help him sleep and to cope with the shooting.

On October 2, 2011, Kim visited the emergency room after waking from a nightmare and suffering a panic attack. Right around the time of this visit, the record shows that Kim's medical providers began recommending inpatient treatment for Kim, because they did not believe he could safely detoxify without experiencing significant, possibly fatal, withdrawal. Kim was eventually admitted to inpatient drug and alcohol treatment on February 13, 2012.

At trial, Kim testified to his life since the shooting. He indicated that he suffered from anxiety and mostly stayed at home, especially at night. Kim testified that he attended church and his son's school functions. When he did go out, he would do so "way out in West Omaha," because he was afraid to be in his own neighborhood. Kim testified that about two

to three times per week, he has nightmares about his family's being harmed. Kim testified that he bought a gun and carries a pocketknife with him. Kim also testified that the threatening telephone calls led the family to move out of his mother's home for a period of time.

Cusumano testified at trial. He was cross-examined about Kim's prior drug use and indicated that such use would not have required inpatient rehabilitation if Kim had not been shot. Cusumano agreed that he had opined Kim needed "rehab," regardless of the shooting, but denied that he meant inpatient treatment when he used that term.

Dr. Brian Lubberstedt was Kim's treating psychiatrist. Lubberstedt was also extensively questioned about Kim's prior drug use. Lubberstedt testified by deposition that Kim's prior use was recreational and that the prior use did not meet any of the criteria for alcohol or chemical dependency. Lubberstedt and counsel for Gen-X had the following exchange:

[Gen-X counsel:] And you indicated also that you couldn't tell for sure whether . . . Kim had alcohol and drug dependency prior to the shooting because you hadn't seen him prior to the shooting?

[Lubberstedt:] Correct.

Q. Isn't it also true that you can't say for sure whether the rehab, inpatient rehab that he went through was a result of solely the shooting or whether it was something that he would have needed to go to regardless of the shooting?

A. [I] believe with the inpatient rehab that he did. I can say with a little bit more certainty that that one was a result.

He was using regularly upon his first evaluation here but not to the level where it required inpatient . . . chemical dependency treatment, so as far as our clinic goes, we were able to witness that part of the progression of his symptoms from regular problematic use to regular what I would consider to be life-threatening use that then required inpatient treatment.

Q. Inpatient treatment is something that would be called for for sporadic — or just regular use, drug use

also, right? As opposed to, I guess, an every-day type of thing?

A. Well, somebody with PTSD doesn't always get chemical dependency treatment, and so, I mean, the two — you know, again, the way that he has progressed within our clinic was that when we — when [Cusumano] first saw him, he felt like the use was at a stable level and at the level where he could be successful with outpatient treatment, and so that was what was initially recommended was actually outpatient treatment, and that was not successful due to the escalation that occurred.

Q. But you don't know whether if the shooting hadn't happened he would have needed rehab regardless?

A. No, I don't know if he would have required rehab.

In addition, Kim's prior mental health history was at issue. According to the record, Kim had suffered from bouts of depression beginning in 2003 and occasionally took medication to treat it. Lubberstedt was asked about this history, but indicated that it did not affect the PTSD or chemical dependency diagnosis, because depression and PTSD were "fairly distinct entities."

Finally, Lubberstedt testified that Kim's past psychiatric care, including inpatient treatment, was reasonable and medically necessary as a result of Kim's shooting. He further testified that he did not believe Kim had reached MMI; however, he allowed that because Kim's primary issue was anxiety about leaving his home, Kim might be able to work from home. In his testimony, Cusumano stated that he did not believe Kim was ready to return to work or that Kim had reached MMI.

As of the time of trial, Kim continued to be treated by Lubberstedt and his staff for PTSD and chemical dependency.

Gen-X offered the report of Dr. Eli Chesen. Chesen agreed with Kim's diagnoses of PTSD and chemical dependency, and he further found that Kim's panic, insomnia, and drinking were related to his PTSD. Chesen indicated that the insomnia and drug abuse were caused by the June 28, 2011, shooting and that inpatient treatment, including participation in a 12-step program, would be appropriate.

But Chesen found that Kim had reached MMI on February 22, 2012. Chesen also concluded there was no objective medical evidence to indicate that Kim's ongoing drug use was a consequence of the shooting or that Kim currently required treatment for PTSD.

In a report dated November 4, 2012, Chesen opined that Kim was a lifelong abuser of recreational drugs, that Kim was well past MMI, and that Kim was falsely exaggerating or imputing his PTSD symptoms for secondary gain.

The Workers' Compensation Court awarded Kim TTD benefits of $400 a week and ordered Gen-X to pay certain outstanding medical expenses, including $5,209 for the October 2, 2011, emergency room visit and $13,236.53 for the inpatient chemical dependency treatment, subject to certain credits for prior payment. The compensation court also ordered Gen-X to pay for reasonably necessary further medical and hospital services.

Gen-X appeals.

## ASSIGNMENTS OF ERROR

Gen-X assigns that the compensation court erred in (1) finding that Kim was temporarily and totally disabled and in awarding past and future TTD benefits; (2) finding the October 2, 2011, emergency room visit compensable; (3) finding the inpatient substance abuse treatment compensable; and (4) ordering Gen-X to pay for future medical treatment.

## STANDARD OF REVIEW

[1,2] A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.[1] In determining whether to affirm, modify, reverse, or set aside a

---

[1] *Hynes v. Good Samaritan Hosp.*, 285 Neb. 985, 830 N.W.2d 499 (2013).

judgment of the Workers' Compensation Court, the findings of fact of the trial judge will not be disturbed on appeal unless clearly wrong.[2]

[3] In testing the sufficiency of the evidence to support the findings of fact in a workers' compensation case, every controverted fact must be resolved in favor of the successful party and the successful party will have the benefit of every inference that is reasonably deducible from the evidence.[3]

## ANALYSIS

*Award of TTD Benefits.*

[4-6] In its first assignment of error, Gen-X assigns that the compensation court erred in awarding Kim TTD benefits. Temporary disability is the period during which the employee is submitting to treatment, is convalescing, is suffering from the injury, and is unable to work because of the accident.[4] Total disability exists when an injured employee is unable to earn wages in either the same or a similar kind of work he or she was trained or accustomed to perform or in any other kind of work which a person of the employee's mentality and attainments could perform.[5] Whether a plaintiff in a Nebraska workers' compensation case is totally disabled is a question of fact.[6]

Gen-X argues that the trial court's finding that Kim was entitled to TTD benefits was contrary to the evidence presented at trial and was clearly wrong. Gen-X suggests that both Lubberstedt and Chesen testified that Kim was ready to return to work.

We disagree with Gen-X's characterization of the record. Lubberstedt's testimony was that Kim was not ready to return to work, though he allowed that Kim might be able to work from home. In addition, Cusumano testified that he did not believe Kim was ready to return to work. Only Chesen testified

---

[2] See *id.*

[3] *Zwiener v. Becton Dickinson-East*, 285 Neb. 735, 829 N.W.2d 113 (2013).

[4] *Id.*

[5] *Id.*

[6] *Id.*

that Kim was ready to return to work. These opinions were all considered by the trial court, which found Lubberstedt's and Cusumano's testimonies more persuasive than Chesen's. This it was allowed to do.[7]

Nor do we find merit to Gen-X's contention on appeal that Kim could work from home. We agree that in response to a question on cross-examination, Lubberstedt did testify to as much. But this statement was contradictory to Lubberstedt's other testimony, as well as to Cusumano's testimony. Where the testimony of the same expert is conflicting, resolution of the conflict rests with the trier of fact.[8] We find no error in the compensation court's resolution of this conflict.

We conclude that the compensation court was not clearly wrong in finding Kim temporarily totally disabled and awarding him TTD benefits. Gen-X's first assignment of error is without merit.

*October 2, 2011, Emergency*
*Room Visit.*

Gen-X next assigns that the compensation court erred in finding Kim's October 2, 2011, emergency room visit was caused by the shooting. Gen-X argues that there was no medical evidence causally linking the visit to the shooting and that the trial court erred when it found such a link in Lubberstedt's testimony.

The trial court found that the emergency room visit was related to the shooting, because the notes from the visit indicated that Kim reported he had previously been shot and felt unsafe at home. The trial court then discussed the opinions of Lubberstedt and Chesen before concluding that the emergency room visit, as well as the inpatient treatment, was compensable based upon Lubberstedt's testimony that Kim's PTSD and chemical dependency were a result of the shooting.

We agree that Lubberstedt did not testify about the causal link between the emergency room visit and the shooting. But

---

[7] See *Swanson v. Park Place Automotive*, 267 Neb. 133, 672 N.W.2d 405 (2003).

[8] *Id.*

we disagree with Gen-X that the trial court found Lubberstedt testified to such a link. Nor do we think expert testimony was necessary to support a causal link between the visit and the shooting.

Instead, we conclude that the trial court was simply noting its reasoning that things relating to the shooting, notably Kim's PTSD and subsequent chemical dependency, were caused by the shooting and were compensable as supported by Lubberstedt's testimony.

And the trial court could reach this decision without Lubberstedt's testifying to a causal link, because such a link was established from the medical record itself. As the trial court found, the notes from the visit indicate that the reason for Kim's visit was the result of his feeling of being unsafe and that he felt unsafe because of the shooting.

Kim's own testimony lends further support to the causal link. Kim testified that right around this time, his alcohol and drug use began to increase and he became afraid to sleep or leave the house. Eventually, he moved out of his mother's house. Kim testified that the situation culminated on October 2, 2011, when he awoke from a nightmare, with his heart racing, and had a panic attack. Kim testified that as a result of the incident, he went to the emergency room.

The compensation court did not err in finding that the October 2, 2011, emergency room visit was related to the shooting and was compensable. Gen-X's second assignment of error is without merit.

*Inpatient Rehabilitation.*

In its third assignment of error, Gen-X argues the compensation court erred in finding that Kim's inpatient chemical dependency treatment was compensable. In particular, Gen-X argues that the trial court failed to adequately consider Chesen's opinions and that it also failed to properly discredit Kim's testimony because of alleged inconsistencies in that testimony. Essentially, Gen-X argues that Kim was a lifelong drug abuser and would have needed inpatient treatment regardless of the shooting.

Gen-X argues that the trial court made certain incorrect findings of fact. We agree insofar as the trial court found Chesen opined that Kim had reached MMI on September 22, 2012, when in fact Chesen opined that Kim had reached MMI on February 22, 2012. And we agree the trial court's findings were incomplete in that it noted Chesen found Kim was "essentially a life-long drug abuser of recreational drugs" in a November 4, 2012, report. While Chesen did make such a finding in that report, Chesen also stated that same opinion in a February 22, 2012, report.

[7,8] But a review of the record shows that contrary to Gen-X's contention, the trial court did not rely on the timing of Chesen's opinions in reaching its ultimate conclusion. In fact, this case presents nothing more than conflicting expert opinions. And where the record presents such conflicting medical testimony, an appellate court will not substitute its judgment for that of the Workers' Compensation Court.[9] As the trier of fact, the compensation court is the sole judge of the credibility of witnesses and the weight to be given their testimony.[10]

Lubberstedt testified that Kim's prior drug use was recreational, that he was not dependent prior to the shooting and subsequent PTSD, and that the inpatient treatment was likely necessary as a result of the shooting. Chesen opined that Kim was a lifelong drug user and that his current use and inpatient treatment were not related to his PTSD diagnosis.

While Kim alternately suggested that he had or had not used particular drugs in the past, his testimony was consistent with respect to his description of that use as recreational. Lubberstedt indicated that at the time Kim began treatment, which was before Kim began to heavily self-medicate for the PTSD, Kim did not meet the definition of chemical dependency.

The trial court was entitled to give more weight to Lubberstedt's testimony than to Chesen's testimony[11] and was

---

⁹ *Id.*

¹⁰ See *id.*

¹¹ See *id.*

the sole judge of the credibility of the witnesses.[12] As such, the compensation court did not err in concluding that the inpatient treatment was compensable. Gen-X's third assignment of error is without merit.

*Future Medical Expenses.*

Finally, Gen-X assigns that the compensation court erred in awarding Kim future medical expenses. Gen-X argues that Lubberstedt's testimony was insufficient to show that further medical treatment was reasonably necessary.

Gen-X's argument is without merit. A review of Lubberstedt's testimony shows that future medical treatment was reasonably necessary. Lubberstedt testified that Kim had not reached MMI. Further, Lubberstedt testified that Kim was continuing counseling and medication management with Lubberstedt's practice. At the time of trial, Kim was still seeking counseling services two to four times per month. Lubberstedt explained that eventually, Kim would "plateau" and would "likely not show a continued improvement with what we're currently doing," but that there were other options left to try. Kim's prognosis was "guarded," but Lubberstedt was "hopeful."

The trial court did not err in finding that Kim was entitled to future medical expenses. Gen-X's fourth assignment of error is without merit.

## CONCLUSION

The decision of the compensation court is affirmed.

AFFIRMED.

---

[12] See *id.*