IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

ADAMSON V. HORIZON WEST

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

LELAND S. ADAMSON, APPELLANT,

V.

HORIZON WEST, INC., APPELLEE.

Filed April 28, 2015.    No. A-13-1011.

Appeal from the Workers' Compensation Court: J. MICHAEL FITZGERALD, Judge. Affirmed in part, and in part reversed and remanded for further proceedings.

Samuel W. Segrist, of Segrist Law Firm, P.C., L.L.O., for appellant.

Todd R. McWha and Angela M. Franz, of Waite, McWha & Heng, for appellee.

MOORE, Chief Judge, and RIEDMANN and BISHOP, Judges.

MOORE, Chief Judge.

## INTRODUCTION

Leland Adamson appeals from an award of benefits entered by the Nebraska Workers' Compensation Court against Horizon West, Inc. Adamson challenges the finding that he was at maximum medical improvement (MMI) with respect to his secondary depression arising out of his work-related shoulder injury. Because the evidence was insufficient to conclude that Adamson had reached MMI with respect to his secondary depression, we reverse the decision of the lower court and remand for further proceedings.

## BACKGROUND

In November 2007, Adamson injured his left shoulder in an accident arising out of and in the course of his employment with Horizon West while he was installing a heavy glass window into the door of a large tractor. Adamson notified his manager of the accident and sought medical

- 1 -

treatment with his family physicians. Adamson was referred to Dr. Darrel Fenton, an orthopedic surgeon, who performed the first of Adamson's three shoulder surgeries in December 2007. Adamson continued to experience left shoulder pain, and Fenton performed a second shoulder surgery on Adamson in February 2008. In June 2008, Fenton opined that Adamson had reached maximum medical improvement (MMI) and assigned a 3-percent impairment rating to his upper extremity. Adamson was taken off work right after his injury, but he returned to work in March 2008 and continued working for Horizon West for the rest of 2008. Adamson did not return to work for Horizon West following his third shoulder surgery performed by Fenton in March 2009.

Adamson saw numerous doctors following his injury, but we have set forth only those details of his medical treatment necessary to resolution of this appeal. In January 2010, Adamson began seeing Dr. Roy Sanford Kiser, Jr., who was board certified in both pain management and psychiatry. Kiser examined Adamson and diagnosed "developing chronic pain syndrome" with the following components, symptoms, and problems:

1. Chronic left shoulder pain associated with failed shoulder surgery syndrome.
2. Rule out complex regional pain syndrome symptoms of the left shoulder.
3. Left ulnar neuropathy due to pressure from sling following first shoulder surgery.
4. Inability to function in usual social, work, and/or family roles due to the above.
5. Depression secondary to the above.
6. Anxiety secondary to the above.
7. Insomnia secondary to the above.
8. Inability to adapt to stress due to aggravation of pain and the above symptoms caused by pain.

Kiser noted, "The above components of [Adamson's] chronic pain syndrome mutually aggravate each other in sets of complex, interlocking vicious cycles, which must be addressed simultaneously in treatment planning in order to achieve reduction of pain." Kiser prescribed medications to manage Adamson's pain, and to alleviate sleep issues caused by his pain and gastrointestinal issues caused by the pain medication.

Adamson saw Kiser again in February 2010, and Kiser made adjustments to Adamson's prescribed pain medications. Kiser determined that Adamson should remain off work indefinitely for further medication regimen adjustments and referred him for psychotherapy services "to deal with the severe depression and anxiety caused by the adverse effects of his work injury pain rendering him unable to continue an occupation that has been so meaningful for him." Kiser also recommended vocational rehabilitation services for Adamson. Kiser made further adjustments to Adamson's medications in March. Adamson's "care manager" had recommended psychological testing with Dr. Ann Talbot, which Kiser "strongly recommend[ed] in order to assess the role of depression as an adverse [e]ffect of his work injury." Kiser also found Adamson to be "a strong candidate for vocational rehabilitation services in that he will likely have a major decrease in chronic pain syndrome symptoms if he is able to get back to work and some activity which does not cause aggravation of his left shoulder pain."

Talbot, a licensed psychologist, examined Adamson in March and April 2010. Talbot found that Adamson may be at increased risk for having an exaggerated negative reaction to stressful or invasive medical procedures because of his psychological profile. Talbot noted that Adamson had

a significant depressive process that was impeding his capacity to respond to medical treatment and manage his pain disorder. She noted that Adamson's shoulder injury and the ensuing complications resulting in an apparent chronic pain disorder and physical limitations had adversely affected not only Adamson's work function but also his sense of self and identity. Talbot recommended a combination of psychopharmacology, psychotherapy, and social support in order to treat Adamson's "depression, tremendous sense of grief and loss, improve his coping skills, and better manage his pain disorder." Talbot referred Adamson for outpatient psychotherapy, and he was to remain under Kiser's care for continued medication management.

In May 2010, Kiser again adjusted Adamson's medications. Kiser noted that:

[Adamson's] degree of distress over not being able to work was notable in [his] psychological testing by [Talbot] in that [Adamson] is emphatic in that testing and in our appointments about his need to be able to go back to work and be productive. I am concerned that the Workers' Compensation insurance carrier is distorting a single element of [Talbot's] report in this regard to portray [Adamson] as being not genuine and exaggerating his symptoms. The medical records have clearly indicated that [Adamson] is not faking any symptoms.

Kiser also noted the need to initiate vocational rehabilitation training, "which will likely be a major factor in helping him move towards [MMI]."

Dr. Eli Chesen performed an Independent Medical Examination of Adamson in June 2010 at Horizon West's request. Chesen concluded that Adamson did not appear to manifest a major depressive disorder or other psychiatric disorder as a consequence of his shoulder injury. Chesen found no objective findings to support Adamson's description of ongoing excruciating pain and felt that Adamson did not have "RSD or CRPS [pain syndrome]." Chesen felt the psychological testing by Talbot was consistent with his own observations of Adamson's "grimacing and hyperventilating with symptom exaggeration." Chesen reported, "[Adamson] claims an absence of any response to specific, localized or system treatment, something which correlates with drug seeking behavior." In response to specific questions, Chesen wrote that Adamson did not suffer from anxiety or depressive disorder and stated that Adamson's claimed symptoms "appear related to situational problems." Chesen opined that Adamson was never disabled "from a psychiatric vantage point" as a result of his shoulder injury and that no further psychological treatment was necessary.

In June 2010, Adamson returned to Kiser, who noted the IME by Chesen and disagreed with Chesen's opinions. In his appointment notes, Kiser stated that in the IME "there was clearly no consideration of the fact that [Adamson's] emotional symptoms are part and parcel of his chronic pain syndrome complex." Kiser also noted that Chesen was apparently only board certified in psychiatry, unlike Kiser who was board certified in both psychiatry and pain management and pain medication. Kiser made further adjustments to Adamson's medication in June and again in July.

In July 2010, Dr. D.M. Gammel evaluated Adamson's medical records, up through the IME by Chesen, and concluded that Adamson had reached MMI. Gammel assigned a 5-percent impairment rating to Adamson's left upper extremity and prepared work restrictions. Gammel determined that Adamson could work an 8-hour day, with various limitations which we need not

detail here. At some point after receiving Gammel's report, the workers' compensation carrier ceased paying for further medical care for Adamson, including medications.

Adamson next visited Kiser in September 2010. Kiser noted that the workers' compensation insurance carrier was no longer paying for Adamson's medications. Kiser prepared a statement that Adamson was still under active treatment for his work injury of November 2007, was not at MMI, was not released to return to work, and his work release date was indeterminate. Kiser provided Adamson with samples of one of his medications and made adjustments to others. On October 18, 2010, Adamson returned to Kiser with complaints of considerable pain in his left shoulder due to lack of medications that were not being paid for by workers' compensation insurance. Kiser again provided some medication samples and discontinued others. This was Adamson's last visit to Kiser until August 2012.

In February 2011, Jerry Gravatt was appointed to provide vocational rehabilitation services to Adamson. Gravatt met with Adamson on February 17, at which time Adamson complained of pain and limitations of his ability to lift more than 2 to 3 pounds with his left arm and inability to reach above his head with his left arm. Gravatt noted Adamson's past work history as a mechanic. Adamson obtained part-time employment in the summer of 2011 as a driver and delivery person. Gravatt prepared a vocational rehabilitation report in November. Using Gammel's restrictions, Gravatt found five available jobs that might fall within those restrictions. Gravatt noted that opportunities for employment are very limited in the region surrounding Sidney, Nebraska. In his July 2012 progress report, Gravatt noted that Adamson:

> [F]eels he is unable to work on a full-time basis because of the pain that he is having from his shoulder injury. He also deals with issues of being able to cope with these problems on a full-time basis. [Adamson] functions on a part-time basis by working with Wolf Auto delivering cars. He is very reluctant to indicate as to what extent he is involved in this and what hours he presently works. He indicated to me that it is a part-time job working two to three times per week and on an irregular basis. With [Adamson's] current state of mind and his frustration with the workers' compensation situation that he is going through, it would be very difficult to state that [he] would be able to function in a 40-hour work week.

In his April 2013 progress report, Gravatt, again using Gammel's restrictions, found seven jobs then currently available in a 50-mile radius of Sidney within Adamson's restrictions. At that time, Gravatt noted that Adamson continued to work part-time delivering cars, but Gravatt had no information available as to the number of hours worked by Adamson or his pay rate.

The compensation court appointed Dr. Thomas G. Fry, a board certified orthopedic surgeon with a fellowship in hand and upper extremity reconstructive surgery, to perform an IME. Fry examined Adamson in March 2012 and reviewed his medical records. During the examination, Adamson exhibited extreme guarding, which limited Fry's ability to administer certain tests and to give an impairment rating based upon motion. Fry gave no opinion as to permanent impairment. Fry found a surprising lack of atrophy in Adamson's shoulder, which indicated to him that Adamson could move his arm more than indicated by the physical exam. Based on his review of a bone scan performed in 2009, Fry recommended a follow-up bone scan to rule out neoplastic lesion such as a pathologic fracture. Fry opined that Adamson reached MMI with respect to his shoulder injury on October 18, 2010, which was the date of the last medical treatment in the records

available to Fry. In answer to additional questions posed in April, Fry stated that at the time of the IME, Adamson's medications of Advil and vitamins were not specifically related to his work injury, Adamson had no indication of a reflex sympathetic dystrophy, and Adamson had no evidence of chronic regional pain syndrome. In response to further questions posed in October, Fry stated that the follow-up bone scan, ordered by Kiser in August 2012, suggested the possibility of severe acromioclavicular joint pain, noting that subluxation and pain in that joint and the history of the pop experienced by Adamson at the time of his injury were consistent with the described injury. Fry suggested a diagnostic injection of this joint and follow-up surgery if the injection provided significant pain relief.

Upon the parties' request, the compensation court also appointed Dr. George E. Kalousek, a psychiatrist/neurologist, who examined Adamson in March 2012. Kalousek determined that Adamson suffered from a major depressive disorder and also from chronic pain. Kalousek stated:

> I do not think any physician has doubted the fact that [Adamson] has chronic pain. [Talbot] thought that he might be exaggerating things, . . . and I tend to agree with her reading of the psychological testing that he did, but many times people with chronic pain disorders will exaggerate things, frequently because they are depressed and anxious, which he certainly is.

Kalousek recommended psychiatric care and medication for Adamson's mental health conditions, stating that Adamson had received inadequate care and was not at MMI for those conditions.

On August 28, 2012, Adamson returned to Kiser for examination. Kiser ordered the follow-up bone scan recommended by Fry in his March 2012 report. Kiser noted that Adamson's psychological status had deteriorated because of his inability to work. Kiser noted that certain medication had helped Adamson, but that the carrier would not pay for it.

Horizon West's carrier ceased making payments to Adamson for further medical care, including medications, at some point after receiving Gammel's July 2010 report finding Adamson to be at MMI. The record reflects that although psychotherapy had been recommended, such had not occurred, presumably as a result of the cessation of payment for medical expenses by the carrier. In March 2011, Adamson filed a petition in the workers' compensation court in which he alleged that he suffered injury to his shoulder as a result of the accident, and that he developed psychological injuries as well as a result of the accident. Horizon West generally denied that Adamson suffered any injury as a result of the accident. At trial, the medical evidence detailed above was received.

Following trial, the compensation court entered an award of benefits to Adamson on October 10, 2013. The trial judge determined that Adamson reached MMI on October 18, 2010 (adopting Fry's opinion based upon the date of examination by Kiser) and that Adamson had a 10-percent loss of use of his left upper extremity. In concluding that MMI had been attained, the judge reasoned, "No matter what is done, [Adamson] will always have pain and he will be depressed because of the pain and his inability to earn what he earned prior to the accident." Noting that Adamson has chronic pain and will have chronic pain for an indefinite time into the future, and that Adamson is depressed, the judge ordered further medical care including medication for Adamson's pain, as well as treatment for his depression, including psychologists, psychiatrists,

and medication. The court further ordered vocational rehabilitation retraining to see if schooling would be appropriate. Adamson subsequently perfected his appeal to this court.

## ASSIGNMENTS OF ERROR

Adamson asserts that the trial judge erred in (1) finding him to be at MMI for his psychological injury while also ordering continuing psychological treatment and failing to make a reasoned decision in that regard, (2) failing to make a reasoned decision when it suspended all temporary benefits but ordered continuing psychological treatment and vocational rehabilitation services, (3) finding that he had received psychological treatment prior to trial and that any future psychological treatment would be for maintenance purposes, (4) failing to render a loss of earning capacity for his psychological impairments, and (5) placing him at MMI for his psychological injuries when no psychiatrist had placed him at MMI or rendered opinions on permanent restrictions or impairments for psychological injuries.

## STANDARD OF REVIEW

The judgment made by the compensation court shall have the same force and effect as a jury verdict in a civil case. *Clark v. Alegent Health Nebraska*, 285 Neb. 60, 825 N.W.2d 195 (2013). A judgment, order, or award of the compensation court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Id.*

On appellate review, the findings of fact made by the trial judge of the Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Clark v. Alegent Health, supra.* If the record contains evidence to substantiate the factual conclusions reached by the trial judge in workers' compensation cases, an appellate court is precluded from substituting its view of the facts for that of the compensation court. *Id.* An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Id.*

## ANALYSIS

*Finding of MMI.*

Adamson asserts that the trial judge erred in finding him to be at MMI for his psychological injury while also ordering continuing psychological treatment and failing to make a reasoned decision in that regard. He also asserts that the trial judge erred in placing him at MMI for his psychological injuries when no psychiatrist had placed him at MMI or rendered opinions on permanent restrictions or impairments for psychological injuries.

In addition to physical impairments, psychological injuries are compensable under the workers' compensation scheme. *Worline v. ABB/Alstom Power Integrated CE Services*, 272 Neb. 797, 725 N.W.2d 148 (2006). Where the evidence is sufficient to permit the trier of fact to find that a psychological injury is directly related to the accident and the employee is unable to work, the employee is entitled to be compensated. *Id.*

In *Worline*, the worker suffered injuries to his neck, shoulder, and lower back as a result of a work-related injury in 2000. In 2002 and 2003, the worker's condition deteriorated and he became increasingly depressed and angry over his injuries and treatment, as well as his inability to return to work. A psychologist noted that the worker's frustration, pain, and anger were secondary to his injury received on the job. An occupational medicine specialist opined that the worker's emotional difficulties were causally related to the circumstances surrounding the work-related accident, which circumstances included the denial of his workers' compensation claims and the resulting litigation, his medical treatment, and the difficulties he experienced functioning in his job. The worker sought benefits for his physical as well as his emotional, psychological, and psychiatric problems. In addition to finding that the neck, shoulder, and back injuries arose out of and in the course of the worker's employment, the trial court also found that the worker's inability to continue to work in his previous occupation caused him to be angry and frustrated. The trial court went on to find that the worker's inability to deal with his present situation and to perform physical activities and labor as he had in the past were a result of the injuries suffered in the accident. The trial court found that the worker would not reach MMI until he received counseling, and found he was entitled to receive temporary benefits, vocational rehabilitation services, and all future medical care arising from the work-related accident.

On appeal, the Nebraska Supreme Court in *Worline* noted the conflicting medical evidence regarding the cause of the worker's psychological difficulties, but concluded that there was sufficient evidence to permit the trial court to find that the worker's psychological injuries resulted from the work-related accident. The Court found no error in the determination that the worker needed counseling for his anger and frustration and that until he received this counseling, he would not reach MMI.

While Horizon West argues that Adamson did not sustain a psychiatric or psychological injury, Horizon West nevertheless does not dispute that Adamson was diagnosed with chronic pain syndrome as a result of the work-related accident and that Adamson has depression secondary to that syndrome. Horizon West in fact states that "[t]he doctors agree that the depression was secondary to [Adamson's] chronic pain". Brief of Appellee at 14. Thus, as in *Worline*, there was evidence in this case that Adamson's secondary depression resulted from his work-related injury. The compensation court discussed this evidence in its detailed award and recognized that Adamson "will always have pain and he will always be depressed because of the pain and his inability to earn what he earned prior to the accident."

The date of maximum medical improvement for purposes of ending a workers' compensation claimant's temporary disability is the date upon which the claimant has attained maximum medical recovery from all of the injuries sustained in a particular compensable accident. *Stacy v. Great Lakes Agri Marketing, Inc.*, 276 Neb. 236, 753 N.W.2d 785 (2008). A workers' compensation claimant has not reached maximum medical improvement until all the injuries resulting from an accident have reached maximum medical healing. *Id.* Generally, whether a workers' compensation claimant has reached maximum medical improvement is a question of fact.

Gammel and Fry concluded that Adamson had reached MMI for his work-related shoulder injury. The trial judge relied on Fry's opinion in finding that Adamson had reached MMI on October 18, 2010. In its award, the trial judge noted Kaloucek's opinion that Adamson is not at MMI relating to his mental health conditions. The court nevertheless determined that Adamson

had reached a point in time when he will get no better or no worse and had plateaued with regard to his ability to improve from further treatment.

Based upon our review of the record, we determine that the evidence is insufficient to support a finding that Adamson is at MMI with regard to his secondary depression and other mental health conditions arising from his work-related injury. The medical opinion adopted by the trial court regarding MMI was from Fry, an orthopedic physician who opined solely regarding Adamson's shoulder injury. Although Gammel also determined that Adamson was at MMI, his opinion related only to Adamson's shoulder injury. None of the medical evidence indicated that Adamson was at MMI with regard to his secondary depression and mental health conditions. Kiser, board certified in both pain management and psychiatry, determined in September 2010 that Adamson was not at MMI. Kalousek, a psychiatrist/neurologist, determined in March 2012 that Adamson was not at MMI with regard to his mental health conditions. Kalousek noted that Adamson needed psychiatric care and medication and that he had not received adequate care to date in this regard. The record indicates that Adamson had not been able to receive the psychotherapy which was recommended due to the cessation of payment for medical care by the workers' compensation carrier in 2010. In addition, Adamson's ability to receive medication was negatively affected at this same time. Thus, the only evidence in the record regarding whether Adamson had reached MMI for his secondary depression arising from the accident clearly indicates that he is not at MMI and indicates that mental health treatment and medication management is needed before MMI may be reached for these secondary problems. The trial court's finding that Adamson could not improve with further treatment is clearly erroneous as it relates to his secondary depression. Because Adamson has not attained maximum medical recovery from all of the injuries he sustained in the work-related accident, it was clear error to conclude that he had reached MMI.

*Temporary Total Disability and Future Medical Benefits*.

Adamson asserts that the trial judge erred in failing to make a reasoned decision when it suspended all temporary benefits but ordered continuing psychological treatment and vocational rehabilitation services.

Temporary disability is the period during which the employee is submitting to treatment, is convalescing, is suffering from the injury, and is unable to work because of the accident. *Kim v. Gen-X Clothing, Inc.*, 287 Neb. 927, 845 N.W.2d 265 (2014). Temporary disability benefits should be paid only to the time when it becomes apparent that the employee will get no better or no worse because of the injury. *Visoso v. Cargill Meat Solutions*, 285 Neb. 272, 826 N.W.2d 845 (2013). Temporary disability benefits are discontinued at the point of maximum medical improvement, because a disability cannot be both temporary and permanent at the same time. *Id.*

Our conclusion that the compensation court erred in determining that Adamson had reached MMI is also dispositive of Adamson's claim that it was error to suspend his temporary benefits. Although there is medical evidence to support the finding that Adamson was at MMI with regard to his shoulder injury, the legally significant date--the date of MMI for purposes of ending a workers' compensation claimant's temporary disability--is the date upon which the claimant has attained maximum medical recovery from *all* of the injuries sustained in a particular compensable accident. *Rodriguez v. Hirschbach Motor Lines*, 270 Neb. 757, 707 N.W.2d 232

(2005). Because Adamson had not reached MMI with regard to his secondary depression and mental health conditions, the compensation court erred in determining that Adamson's entitlement to temporary total benefits ended on October 18, 2010. Accordingly, we reverse the order of the trial court and remand the cause for further proceedings consistent with this opinion.

*Conclusion Regarding MMI/Temporary Benefits.*

Although Adamson argues the compensation court's errors with regard to MMI and suspension of temporary benefits in the context of a failure to make a reasoned decision, we disagree. The court issued a lengthy order outlining the rationale for its decision and provided us a basis for meaningful appellate review. See, Workers' Comp. Ct. R. of Proc. 11(A)(2011). Rather, we conclude that the compensation court was clearly wrong in its determination that Adamson had reached MMI for all of his work-related injuries, including the secondary depression and mental health conditions. Thus, we reverse those portions of the award in which the court found that Adamson was at MMI and that his temporary total benefits ceased on October 18, 2010. Further, the court should have deferred deciding whether or not Adamson was entitled to permanent disability benefits until he reached maximum medical recovery with regard to all injuries resulting from his work-related accident and we therefore reverse that portion of the award. The portions of the award requiring Horizon West to pay for past medical expenses and future medical care are affirmed. Because we are reversing the award of permanent benefits since Adamson is not at MMI, we also reverse the award of vocational rehabilitation services until permanency is established. When an injured employee has reached maximum medical improvement, any remaining disability is, as a matter of law, permanent. *Rodriguez v. Hirschbach Motor Lines, supra*. Because Adamson has not yet reached MMI as to his psychological injuries, whether he suffers from permanent impairment cannot yet be determined. To hold that a worker can receive vocational rehabilitation benefits absent a finding that the worker is permanently impaired does not amount to a sensible reading of Neb. Rev. Stat. § 48-162.01 (Reissue 2010). *Green v. Drivers Management, Inc.*, 263 Neb. 197, 639 N.W.2d 94 (2002).

Because we have determined that the court erred in finding Adamson to be at MMI, we need not address Adamson's remaining assignment of error regarding the court's failure to render a loss of earning capacity for his psychological impairments. See *Visoso v. Cargill Meat Solutions, supra* (after reaching MMI, injured employee has burden of proving that injury caused permanent impairment and that permanent impairment resulted in loss of earning capacity).

CONCLUSION

The compensation court erred in finding Adamson had reached MMI and, therefore, also erred in suspending his temporary total disability benefits on October 18, 2010, and in making a determination relating to permanent impairment and awarding vocational rehabilitation services. We find no error in the award of past medical bills and future medical benefits. The cause is remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.